PEOPLE v. MINIEAR.

1. CRIMINAL LAW — PRINCIPAL — ACCESSORIES — ACCOMPLICE — STATUTES.

Every person who procures, counsels, aids, or abets in the commission of an offense is, by statute, subject to prosecution, indictment, trial, and punishment, as if he had directly committed the offense (CL 1948, § 767.39).

2. SAME—STATUTES—PRINCIPALS—ACCESSORIES.

The effect of the statute providing that one who procures, counsels, aids, or abets in the commission of an offense may be charged and convicted as a principal is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal of one who, under the common law, would have been called the principal (CL 1948, § 767.39).

3. SAME—ACCESSORY—CONVICTION OF PRINCIPAL.

Conviction of principal perpetrator of crime of armed robbery *held*, not necessary to proper conviction of one who participated

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 115, 120 *et seq.*
[2–4] 21 Am Jur 2d, Criminal Law § 127 *et seq.*
[5, 6] 58 Am Jur, Witnesses § 758.
[7] 58 Am Jur, Witnesses § 620 *et seq.*
[8, 9] 21 Am Jur 2d, Criminal Law § 446.
[10] 58 Am Jur, Witnesses §§ 724, 767, 817.
[11, 12] 29 Am Jur 2d, Evidence § 500.
[13, 14] 39 Am Jur, New Trial § 169.

as an accessory by driving a get-away car, where he was charged as a principal (CLS 1961, § 750.529; CL 1948, § 767-.39).

4. SAME—ROBBERY ARMED—ACCESSORIES—INSTRUCTIONS.

Claim by defendant, convicted of armed robbery, that his conviction must be reversed on the ground that he was only an accessory to the crime and the guilt of the principal had not been established *held*, without merit, where (1) the guilt of such principal was never in issue, the principal having admitted and described the robbery in detail with his testimony being supported by the testimony of others, (2) defendant's only defense was that of alibi and a proper instruction on alibi was given by the court, (3) no instruction was requested by defense counsel as to the guilt of the principal, and (4) the record does not establish that the failure to give an instruction as to the guilt of the principal in any way prejudiced defendant (CLS 1961, § 750.529; CL 1948, § 767.39).

5. SAME—CROSS-EXAMINATION—CREDIBILITY.

Credibility of a witness may be impeached on cross-examination by inquiring whether such witness has ever been charged with, arrested for, or convicted of a crime but it is beyond the permissible bounds of cross-examination to ask a witness whether he has committed a crime for which he has never been charged, arrested, or convicted.

6. SAME—CROSS-EXAMINATION—CREDIBILITY.

Refusal of trial court to allow defense counsel to ask a witness whether he had committed a particular crime for which he had never been charged, arrested, or convicted, *held*, not error, since impeachment in this manner is limited to crimes for which a witness has been charged, arrested, or convicted.

7. SAME—CROSS-EXAMINATION—LIMITATION.

Claim by defendant that the trial court committed prejudicial error in sustaining objections to questions submitted by his counsel on cross-examination *held*, without merit, where the first objection was made to an argumentative question, the second objection was made to a question calling for an immaterial answer, and the third objection was made to a question calling for a conclusion by the witness, since the answers sought were not properly admissible in evidence.

8. Same—Preliminary Examination—Saving Question for Review.

Any objection to an alleged insufficiency or irregularity of a preliminary examination of one charged with crime must be made prior to or during trial, and may not be raised for the first time on appeal.

9. Same—Preliminary Examination—Saving Question for Review.

Claim by defendant, convicted of armed robbery, that he was entitled to a new trial because the principal witness against him described one crime at the preliminary examination and a different one at trial *held*, without merit, where defendant failed to raise the question during trial or in his motion for new trial (CLS 1961, § 750.529).

10. Same — Witnesses — Impeachment — Evidence — Recent Contrivance or Fabrication.

Cross-examination of a witness which results in his impeachment and establishment of a motive to falsify by recent contrivance entitles the other party to introduce testimony to show that the statements made by the witness on direct examination are consistent with statements made by him before the motive to falsify came into existence and are not the. result of recent contrivance or fabrication.

11. Evidence—Hearsay—Impeachment—Recent Contrivance or Fabrication—Rehabilitation—Prior Consistent Statements.

Prior consistent statements, introduced for the purpose of rehabilitating a witness following testimony on cross-examination which tends to impeach him and indicates that his testimony on direct examination is the result of recent contrivance or fabrication, do not violate the hearsay rule, since such statements are not admissible to prove their truthfulness, but to show that the testimony given on direct examination was not the result of recent contrivance or fabrication.

12. Criminal Law—Evidence—Prior Consistent Statements—Impeachment—Recent Contrivance or Fabrication—Rehabilitation.

Allowing a criminal witness and a police officer to give rehabilitating testimony in trial for armed robbery as to when the witness first informed the police officer that defendant had participated in the crime *held*, not error, where cross-examina-

tion of the defendant resulted in the impeachment of his
direct testimony and indicated a motive to falsify by
recent contrivance, since the rehabilitating testimony was,
under the circumstances, properly admissible for the sole pur-
pose of showing that before the existence of any motive to
falsify, the witness had made statements consistent with
the testimony given on direct examination (CLS 1961, § 750-
.529).

13. SAME—WITNESSES—RECANTATION.
    Courts are not generally impressed by recanting affidavits of
    witnesses who attempt to show that they perjured themselves
    at trial in a prosecution for crime.

14. SAME—WITNESSES—RECANTATION—DISCRETION OF COURT.
    Denial of motion for new trial for armed robbery made on the
    basis of a recanting letter written by the principal witness
    against defendant *held*, not an abuse of discretion on the record,
    where the same judge who denied the motion had presided at
    trial, had observed the demeanor of the witness who later re-
    canted, was aware of defendant's attempt to prove alibi, had
    heard testimony concerning alleged threats made against the re-
    canting witness as to what would happen to him in prison
    if he testified against defendant, was aware that the re-
    canting letter was written while the witness was in prison,
    and knew of the possible motive for perjury on the part of
    the recanting witness (CLS 1961, § 750.529).

Appeal from Midland; Campbell (Robert H.), J.
Submitted Division 3 May 8, 1967, at Grand Rapids.
(Docket No. 2,183.)   Decided December 1, 1967.
Leave to appeal denied February 19, 1968.  See 380
Mich App 758.

Donald Miniear was convicted of robbery armed.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Edward G. Dur-
ance,* Prosecuting Attorney, for the people.

*Floyd E. Wetmore,* for defendant.

HOLBROOK, J.   Donald Miniear, defendant herein, was charged in an information filed January 11, 1966, with the crime of robbery armed.[1]   Defendant was convicted in a jury trial held in February, 1966, in which he was represented by court-appointed counsel.   He was sentenced to a term of 7-1/2 to 15 years in prison.

Defendant appeals from the verdict and judgment of conviction, the sentence, and the trial court's denial of motion for new trial.   Five questions, which are here restated, are raised for review:

1. *May an accomplice be convicted of a crime for which the principal was never charged or convicted?*

The defendant was convicted for his participation in the armed robbery of the Oil City Tavern on December 9, 1965, by one T. P. Myshock—the jury found defendant to have been driving the "get-away" car when the crime was committed.   The principal, T. P. Myshock, testified as to defendant's participation.

It is defendant's contention that because (a) T. P. Myshock was never charged or convicted of the December 9th Oil City Tavern robbery and (b) the trial court failed to give an instruction which required the jury to find that principal Myshock committed the crime in question, he was not properly convicted.

(a)   The applicable statute, CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979), reads as follows:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

---

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

In *People* v. *Smith* (1935), 271 Mich 553, Mr. Justice POTTER stated at p 561:

"Before the enactment of the statute, the conviction of the principal was essential to the prosecution of the accessory. Now all are principals, and the guilt of one does not depend upon the guilt of the other. *The effect of our statute is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal of one who, under the common law, would have been called the principal.* That is what the statute intended to accomplish in abrogating the common-law rule. One who aids and abets may be charged and convicted as a principal. *People* v. *Mangiapane*, 219 Mich 62." (Emphasis supplied.)

The information filed against defendant charges him as a principal. We find no error at this point.

(b) The case of *People* v. *DeBolt* (1934), 269 Mich 39, cited by appellant, states at p 45:

"To sustain the charge of an accessory on the part of defendant, the guilt of the other defendants must have been established."[2]

The trial court gave no instruction to the jury relating to finding guilt on the part of Myshock in reaching a verdict as to the charge against appellant. Examination of this point leads us to conclude there was no error here for at least 2 reasons.

First, the guilt of principal Myshock was never put in issue. He admitted, and described in detail, the robbery. Witnesses testified concerning it. In

---

[2] Also, see, *People* v. *Owen* (1927), 241 Mich 111; *People* v. *Hoaglin* (1933), 262 Mich 162. 22 CJS, Criminal Law, § 105, p 293 cites *People* v. *DeBolt*, *supra*, as supporting the following proposition of law:

"Even where the conviction of the principal need not be shown on the trial of the accessory, the guilt of the principal must be proved beyond a reasonable doubt to convict the accessory, since there can be no accessory without a guilty principal." (Footnotes omitted.)

short, no one ever claimed that someone other than Myshock committed the robbery.

Second, appellant's defense was premised entirely on alibi—*viz.*: that defendant was at the Chat & Chew Restaurant in Midland, Michigan, at the time Myshock robbed the Oil City Tavern. A proper instruction as to the defense of alibi was given and also clarified at defense counsel's request by the trial court.

"As the court sees it, it boils down to pretty much that issue; was he [the defendant] there or wasn't he there; was he there and drove the car away and helped in the commission of the offense that he is charged with or wasn't he. And as the court sees it, that is about all the entire matter boils down to."

At no time during trial did defense counsel question or put in issue the guilt of witness Myshock. Nor did defense counsel request an instruction in this regard. Moreover, it has not been shown to this Court that without such an instruction the jury could not reach a true and just verdict.

2. *Did the trial court improperly limit cross-examination of witness Myshock?*

Defense counsel, on cross-examination of witness Myshock, asked:

"Didn't you rob a bar down in Flint on November 19, the M-54 Bar, with this same 30-30 caliber Marlin carbine—."

Objection was made at this point as to the materiality of the question. In support of the inquiry, defense counsel stated: "I'm testing the man's credibility"; on appeal, further explanation is offered that the purpose of the inquiry was to determine whether the witness would claim that defendant aided in previous robberies. After a brief recess, the ob-

jection was sustained. The trial judge stated as follows:

"The court is going to sustain the objection on the grounds that it is inquiring into collateral matter which the court does not feel is proper cross-examination here. If there is an arrest, that can be shown, or a conviction, that can be shown. I think then it would be proper. But to get into a collateral matter that the court does not feel is at issue here in this particular case, it would not be proper, and therefore, the objection would be sustained. I have not found any authority to the contrary."

Under Michigan law, the credibility of a witness may be impeached on cross-examination upon inquiring whether such witness has ever been charged, arrested or convicted. *People v. Foley* (1941), 299 Mich 358, and cases cited therein. In *People v. Hoffman* (1965), 1 Mich App 557, this Court found no error where the trial court permitted the prosecutor to ask the defendant on cross-examination if he was presently under arrest for additional offenses. The distinction may be close, but to ask a witness whether or not he is guilty of a particular crime exceeds the permissible bounds of cross-examination where the purpose is impeachment of credibility. The trial judge did not abuse his discretion in sustaining the objection raised to defense counsel's inquiry.[3]

Defendant points out 3 other instances where objections to cross-examination of witness Myshock were sustained. We fail to find any error in that the objections were properly made and sustained: the first objection was made to an argumentative question; the second objection was made to a question calling for an immaterial answer; and the third

---

[3] In addition, the prosecutor stated that he was not aware of any charge having been made against witness Myshock for the questioned robbery in Flint on November 19.

objection was made to a question calling for a conclusion by the witness.

3. *Did witness Myshock's description of 1 crime at the preliminary examination and a different crime at trial deprive defendant of a preliminary examination?*

Defendant failed to raise this question during his trial and in his motion for new trial. It cannot be considered now because an objection to alleged insufficiency or irregularity of a preliminary examination must be made prior to or during trial. There was no preservation of a right to appeal as to this matter in the record. *People* v. *Willis* (1965), 1 Mich App 428. Also, see, *People* v. *Will* (1966), 3 Mich App 330.

4. *Did the trial judge err in permitting corroborating testimony by deputy sheriff Myron Whipple as to a conversation with witness Myshock?*

Myron Whipple, a deputy sheriff, was called by the prosecution. Through his testimony, the prosecution attempted to rehabilitate witness Myshock's inconsistent testimony as brought out on cross-examination. The testimony was objected to by defense counsel as hearsay evidence since defendant was not present at the time of the conversation. The objection was overruled.

We are of the opinion that witness Whipple's testimony was admissible for the reason that it was within the so-called rule of recent contrivance or fabrication (also called the rehabilitation rule). A consideration of this rule upon applying it to the admission of witness Whipple's testimony follows.[4]

---

[4] Rather than cluttering the rules' application in the instant case as presented with numerous citations of authority, the authorities examined and relied on are as follows: *People* v. *Purman* (1921), 216 Mich 430, 437, 438; *Cohen* v. *Covelli* (1950), 276 App Div 375 (94 NYS2d 782); *People* v. *Singer* (1949), 300 NY 120 (89 NE 2d 710); *Affronti* v. *United States* (CA 8, 1944), 145 F2d 3; 4 Wigmore on Evidence (3d ed), §§ 1122–1129, pp 193–207; 140 ALR 21.

On direct examination witness Myshock testified as to the events of December 9, 1965.

"*A.* We stopped at a restaurant here in Midland to get something to eat.

"*Q.* I see. Do you know what restaurant it is?

"*A.* Yes. It was the Chat and Chew."

On cross-examination, defense counsel proved a prior inconsistent statement on the part of witness Myshock.

"*Q.* Do you remember my questions and your answers about whether you stopped anywhere and ate supper that night?

"*A.* Yes, I do.

"*Q.* And do you remember what your answer was?

"*A.* Yes, I do.

"*Q.* Well, tell us what your answer was, in general?

"*A.* I said I couldn't remember stopping.

"*Q.* Well, specifically, page 35: '*Q*—Did you stop at any tavern or restaurant other than the Oil City bar on the night of December the 9th? *A*—Not that I can remember. *Q*—In none of your traveling around Isabella county or in your driving to and from Flint, you don't recall stopping? *A*—No, I do not. *Q*—Did you eat at your home? *A*—I can't remember whether we did or not.' Do you remember those questions and those answers?

"*A.* Yes, I do."

At this point in cross-examination defense counsel had proved a prior inconsistent statement, thus impeaching the credibility of witness Myshock. However, and of utmost importance in regard to the rule of recent contrivance, defense counsel continued cross-examination and in so doing inferred that witness Myshock had a motive or motives for changing or falsifying his testimony upon trial, *viz.:*

"*Q.* Well, in any event, Skip [Myshock], you did rob the Oil City Tavern on December 9?

"*A.* That is correct.

"*Q.* And you did rob the Oil City Tavern on December 27?

"*A.* That is correct.

"*Q.* Now, what we're talking about here today is the Oil City Tavern robbery of December 9?

"*A.* Right.

"*Q.* And, as I understand it, you came into court and plead guilty to robbing the Oil City Tavern?

"*A.* On which night?

"*Q.* Well, which night did you plead guilty to?

"*A.* To the December 27 robbery.

"*Q.* Oh, I see. And this is the robbery that you were sentenced on, is that right?

"*A.* That is correct.

"*Q.* And you were sentenced the first of the week, Monday?

"*A.* Correct.

"*Q.* What disposition has been made of the December 9 robbery?

"*A.* I don't know.

"*Q.* Have you ever been arrested for the December 9 robbery?

"*A.* On a specific warrant, you mean?

"*Q.* Yes, sir.

"*A.* No.

"*Q.* You mean that as far as you know that robbery is forgotten?

"*A.* No, I can't say it's forgotten, because I'm here testifying against it today.

"*Q.* Uh-huh. But they haven't arrested you for it, have they?

"*A.* No, not as far as I know.

"*Q.* You came in and told the police that Miniear was with you, is that right, and they didn't arrest you for that December 9 robbery?

"*A.* Not as far as I know, no.

"*Q*. You didn't claim he was with you on the December 27 robbery, did you?

"*A*. No, I didn't.

"*Q*. It was the same car?

"*A*. Yes.

"*Q*. Same tavern?

"*A*. Yes.

"*Q*. You parked in the same location?

"*A*. Yes.

"*Q*. And everything was the same, except the gun?

"*A*. Right.

"*Q*. Right?

"*A*. That is correct.

"*Q*. But you were arrested and sentenced for that one?

"*A*. That is correct.[5]  *  *  *

"*Q*. You couldn't remember at the time of the municipal court hearing?

"*A*. That's right.

"*Q*. And now you're saying that you can remember, and you can identify the place here in town where it was?

"*A*. That is correct.

"*Q*. Now, this identification by you follows Mr. Miniear's filing of a notice with the court here that he is going to attempt to prove that at that particular evening he was at the Chat and Chew bar, isn't that right?

"*A*. Chat and Chew Restaurant?

"*Q*. Or Chat and Chew Restaurant?

"*A*. That's correct.  *  *  *

"*Q*. Did you and Don [the defendant] have a falling-out sometime in the middle of December?

"*A*. Yes.

"*Q*. And you hit him, and he hit you, didn't he?

"*A*. No, he hit me. I didn't hit him.

---

[5] This cross-examination testimony occurred prior to the proving of the prior inconsistent statement, but ties in with the implication of motive to falsify made thereafter by defense counsel.

"*Q.* I see. This was about some kind of language that he'd used in front of one of your girlfriends?

"*A.* That's correct.

"*Q.* And from that time on your friendship withered, is that right?

"*A.* No.

"*Q.* Well, you didn't see him for two weeks before you got picked up, did you?

"*A.* It was more like a week, I believe.

"*Q.* Well, that's kind of unusual, isn't it, because you and Don were seeing quite a lot of each other; you were chums, weren't you?

"*A.* That's right."

At least 2 inferences of motive to falsify by recent contrivance clearly appear from this cross-examination questioning, *viz.:* (1) witness Myshock had a hope of not being prosecuted for the December 9th robbery because of his testimony at defendant's trial and (2) his alleged dislike of defendant could be avenged by testimony unfavorable to defendant. These inferences of motive to falsify opened the door, and therefore, the prosecution under the recent contrivance rule could present bolstering or corroborating evidence in the form of prior consistent statements. Moreover, since prior consistent statements are admissible for the sole purpose of rehabilitation and are not admitted in proof of the truthfulness of statements made on direct examination, there is no violation of the hearsay rule. The record indicates that the trial judge in light of the prosecution's explanation, and the testimony admitted, made a correct ruling as to defense counsel's objection:

*(By Mr. Durance on re-direct examination of witness Myshock)*

"*Q.* When in this process, if you remember, did you first involve Mr. Miniear in this matter; immediately, or when?

"*A.* It was—you mean—

"*Q.* (*Interposing*). When you first told the officers that there was someone else with you and who he was? * * *

"*Mr. Wetmore.* Would you wait, please. I'd like to object to that your Honor. I think it would be hearsay, unless he claims it was done in the presence of Mr. Miniear.

"*Mr. Durance.* If it please the court, he can testify to the fact that when he disclosed this.

"*Mr. Wetmore.* All right.

"*Mr. Durance.* This is a fact that is within his knowledge to testify to.

"*Mr. Wetmore.* All right.

"*The Court.* The objection would be overruled. He may answer.

*By Mr. Durance.*

"*Q.* Could you tell us when you first disclosed that there was another person?

"*A.* This was after my arraignment.

"*Mr. Wetmore.* Pardon me?

"*Witness.* It was after my arraignment.

*By Mr. Durance.*

"*Q.* After you'd been here, or after you'd been to the city court?

"*A.* After I'd been to both.

"*Q.* And did you immediately name the other person?

"*A.* No, I didn't.

"*Q.* Do you remember how long it was after that that you went to municipal court and testified at the examination?

"*A.* I believe it was the next day or the day after. I'm not sure.

"*Q.* And during this period of time were you questioned by various police officers from, we'll say, different state police posts?

"*A.* Yes, quite a few of them.

"*Q.* In regards to a number of offenses?

"*A.* Yes, that is correct.

"*Q.* Now, did there come a time prior to today when you remembered stopping at the Chat and Chew?

"*A.* Yes.

"*Q.* When was that?

"*A.* Well, it was quite a while ago; two or three weeks, I guess.

"*Q.* Did you mention it to any of the officers?

"*A.* Yes, I did. I mentioned it to Detective Whipple."

*(By Mr. Durance on direct examination of witness Whipple)*

"*Q.* Now, would you state your full name and residence, please?

"*A.* My name is Myron Whipple. The residence is 2715 Gary street, Midland.

"*Q.* And your occupation?

"*A.* Deputy sheriff, Midland county.

"*Q.* Are you acquainted with Thomas Myshock?

"*A.* Yes, I am.

"*Q.* And were you present at the preliminary examination of Donald Miniear when Thomas Myshock testified?

"*A.* Yes.

"*Q.* And did you convey Mr. Myshock back to the jail?

"*A.* I can't answer that for sure.

"*Q.* Meet him back there immediately thereafter?

"*A.* Yes, I did.

"*Q.* And at that time you had heard him testify at the examination?

"*A.* Yes.

"*Q.* And at that time did he say anything to you? This is referring back to the date of the examination when you were returned to the jail and you met him there. Did he make any reference at that time to you in respect to the Chat and Chew Restaurant?

"*Mr. Wetmore.* I'll have to object, Your Honor, unless a proper foundation is laid to establish if Mr. Miniear was present.

"*Mr. Durance.* If it please the court, the purpose of the statement is not to establish the fact that they were at the Chat and Chew Restaurant. The purpose of this question, and I believe properly so, following the statement by counsel in prefacing one of his questions to Mr. Myshock, whether he thought of the Chat and Chew after the notice of alibi was discussed, and I wanted to ask this question to establish the time in which the restaurant came up.

"*Mr. Wetmore.* It's hearsay, your Honor.

"*Mr. Durance.* Not the fact that he mentioned the Chat and Chew is not hearsay.

"*The Court.* The question may be answered. The objection would be overruled.

(Whereupon the court reporter reads the last question back)

"*Witness.* Yes, he did.

*By Mr. Durance.*

"*Q.* And what was that?

"*Mr. Wetmore.* This is subject to the same objection?

"*The Court.* Yes, it would be.

"*Witness.* He had indicated that he had testified in municipal court and that he was mistaken; that before leaving Midland he had stopped at the Restaurant and had a steak."

We find no error in regard to the trial court's ruling allowing witness Whipple's testimony to be received.

5. *Did the post-trial recanting letter of witness Myshock entitle defendant to a new trial?*

Defendant was sentenced on March 8, 1966, and was thereafter transferred directly to the State prison at Jackson. T. P. Myshock was already a resident of the prison. On March 12, defense counsel received a letter from Myshock dated March 9, reading as follows:

*"Dear Sir,*

"The reason I am writing has to do with my testimony in the case of Don Miniear.

"Mr. Wetmore I think you should know that I didn't intentionally lie about what happened. But, I was very mixed up emotionally. I didn't really know what I was doing.

"I want you to know that Don didn't have anything to do with the robbing of that bar. Don was in the restaurant at the time of the robbery.

"If you want me to testify for Don at his appeal trial, I will do all I can to right the wrong I've done him.

                    "Cordially yours,
                    "T. P. (Skip) Myshock"

A motion for new trial, based solely on Myshock's recanting letter, was made by defense counsel on March 15. A hearing was held on the motion on March 22, at which time the trial judge denied it, stating:

"Well, in regard to this matter, the witness here, Thomas Myshock, testified at the trial, which the judge here presided at and heard Mr. Myshock's testimony, and, also, Mr. Myshock also testified at the preliminary examination, and although there were some discrepancies in his testimony as far as the testimony is concerned, it was primarily the same as far as the involving of the defendant, Donald Miniear. And the court does not feel that the letter, in and of itself, is sufficient here to grant the request made by the defendant in his motion, and, therefore, the court will deny the motion for a new trial that has been requested by the defendant, and, therefore, the motion will be denied."

The trial judge also denied an alternative request contained in the motion for new trial as follows (that Myshock be returned for the purpose of inquiring

into the truth or falsity of his trial testimony in view of his recanting letter):

"I cannot see where anything would be gained by having Mr. Myshock come up here to say the same thing that he said in the letter.   *   *   *
"But I would still, even though he came up here, feel that there would be nothing to be gained by his testifying.
"So that I would also deny what you have asked for here in the alternative."

The denial of the motion for new trial and the alternative request therein contained are asserted as error by defendant.

*People* v. *Dailey* (1967), 6 Mich App 99, a most recent case, involved a recantation. Therein, the trial court denied a motion for new trial premised on a recanting affidavit and this Court affirmed upon finding no abuse of discretion. However, unlike *People* v. *Dailey, supra,* where there was unchanged testimony of 4 other witnesses, the conviction of defendant Miniear appears to have resulted primarily from the testimony of witness Myshock.

Defendant has called our attention to the case of *People* v. *Keller* (1924), 227 Mich 520, in support of the proposition that in cases where but one person testifies against another and that person appears to have little regard for or appreciation of an oath, a trial court should be liberal in exercising its discretion to grant a new trial. An examination of this case, and several others cited by defendant, indicates it to be of a particular class of cases, *viz.*: those involving uncorroborated sex offenses and particularly those against the defendant's minor daughter where strong motives are suggested for false accusation.

The trial judge observed witness Myshock on the trial and was aware of other circumstances—an at-

tempt to prove an alibi; alleged threats made to Myshock at Jackson prison by friends of defendant were he to testify against defendant; and the possible motive for perjury in that defendant and Myshock had a "falling out."

This is indeed a difficult question. We turn to the rule concerning recantations in the case of *People v. Smallwood* (1943), 306 Mich 49, wherein Mr. Justice BUTZEL stated at p 55 as follows:

"As a rule the Court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial."

The trial judge's denial of a new trial in this case based upon his observation and knowledge of attendant conditions was not an abuse of discretion.

Affirmed.

FITZGERALD, P. J., and BURNS, J., concurred.