*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIAN DANIEL BLACKKETTER,

Defendant-Appellant.

UNPUBLISHED
August 05, 2025
11:28 AM

No. 365456
Eaton Circuit Court
LC No. 2020-020058-FC

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*) (relationship; digital penetration), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*) (relationship; sexual contact), and one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion; oral penetration). He was found not guilty of one additional count of CSC-III (anal penetration). Defendant was sentenced to concurrent prison terms of 135 months to 40 years for the CSC-I conviction and 10 to 15 years each for his CSC-II and CSC-III convictions. Defendant now appeals by right. We affirm.

## I. FACTS

The sexual abuse began while the victim, JM, was living in Colorado with his mother and defendant, JM's stepfather. Over the next nearly 10 years, the abuse evolved from sexual touching to sexual penetration. JM told his half-sister about the abuse when JM was about 15 years old. That disclosure led to an investigation by Child Protective Services (CPS), but the investigation was closed when JM disavowed the allegations.

In November 2018, patrol officers from the Eaton County Sheriff's Office were dispatched to make contact with JM after he called the county's 911 emergency line. JM had left the family home after an argument with defendant over a cell phone and was just walking down a road. Christopher Cunningham, one of the responding officers, was aware of the prior CPS investigation. Speaking with JM alone, Cunningham raised the issue of sexual assault, and JM told Cunningham that defendant had been sexually abusing him for years.

-1-

The allegations of abuse led to proceedings in the family division of the circuit court (family court) regarding JM's three younger half-brothers. JM was called to testify about the abuse at one of the hearings.[1]

Roughly four months after speaking with Cunningham, JM e-mailed a letter to the Eaton County Prosecutor and recanted his allegations. JM stated that he was coerced by the police to make the allegations. Moreover, what JM had told police and lawyers "was spoken mainly from anger and stress as well as coercing from those who were questioning [JM] at the time." At trial, JM testified that what he had written in the e-mail was untrue and that he was motivated to write the letter by his mother, who told JM that the only way to stop the family court proceedings was for JM to recant.

At the criminal trial, the prosecution sought to introduce other-acts evidence pursuant to MCL 768.27a. The prosecution asked to have JM testify about defendant's sexual abuse of him while the family was living in Colorado. Defendant opposed the request on the grounds that any minimal probative value the evidence might have was substantially outweighed by the danger of unfair prejudice and the danger the jury would be confused about what criminal acts he was on trial for in Michigan. Defendant also argued that the jurors could find him guilty not because the evidence showed beyond a reasonable doubt he committed the crimes charged, but because the other-acts evidence led them to believe he was a bad man who needed to be punished.

The circuit court concluded the other-acts evidence was relevant and its probative value was not outweighed by the danger of unfair prejudice. The court further found that the charged and uncharged acts were similar and fell under MCL 768.27a. The court explained:

> [I]n Colorado it started with the touching and the fellatio. And then, increased to continued fellatio and anal sex. Still, obviously, there would be a degree of touching, but I think it's a stretch to argue that these are so dissimilar that that should invalidate the probative value. Same Defendant, same child, same sexual abuse.
>
> And I think it is important that the victim be able to testify that this started back in Colorado and continued in Michigan. . . .

The court also concluded that how the recantation letter impacted JM's credibility was a matter for the jury to decide.

---

[1] Unbeknownst to the jury, those proceedings resulted in the termination of the parental rights of defendant and JM's mother to JM's three younger half-brothers. Both parents appealed to this Court and we affirmed the termination orders. *In re Blackketter*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2020 (Docket No. 352213) (mother), and *In re Blackketter*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2020 (Docket No. 350185) (defendant).

## II. DUE PROCESS

Defendant argues that the circuit court erred by allowing the prosecution to introduce prior consistent statements made by JM, thereby improperly bolstering JM's trial testimony. He asserted those statements consisted of JM's testimony in the family court about the letter recanting his allegations and what he told "investigators." Defendant maintains the statements are not excluded from the hearsay rule under MRE 801(d)(1)(B) because they were not made before the reason or motivation to fabricate arose. Defendant asserts that JM's motivation to fabricate was born of his anger and resentment toward defendant, coupled with the improper influence of JM's maternal grandparents, both of which occurred before the consistent statements were made. Alternatively, defendant argues that his trial counsel rendered ineffective assistance by failing to raise an objection to admission of the prior consistent statements.

Regarding JM's testimony in the family court proceedings, defense counsel's affirmative approval of the testimony waived any objection to it on appeal. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). To preserve a due-process issue for appellate review, a defendant must raise the issue in the trial court. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). At trial, defense counsel did not raise an objection, hearsay or otherwise, to the admission of prior consistent statements made by JM to persons investigating the allegations. Therefore, that issue is unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and is subject to review for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Unpreserved constitutional issues are reviewed for plain error affecting the defendant's substantial rights. *Id*. at 764. To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. Generally, to establish that an error affected substantial rights a defendant must show "that the error affected the outcome of the lower court proceedings." *Id*. If the plain error affecting substantial rights is established, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citations omitted; alteration by *Carines*).

Defendant also did not preserve his claim of ineffective assistance of counsel because he did not seek a new trial or evidentiary hearing on the issue. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Failure to do either "ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Where the record does not support the claim of ineffective assistance of counsel, the issue is considered waived. *Id*. Because no evidentiary hearing on the issue was held, our review is limited to the lower court record. *Id*.

Hearsay is "a statement" which "the declarant does not make while testifying at the current trial" that "a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." MRE 801(a). MRE 801(d) excludes from the definition of hearsay certain types of statements that would otherwise fit the definition. Defendant relies on subrule (d)(1)(B), which provides that a prior statement is not hearsay if the declarant "testifies and is subject to cross-examination about" it, the statement is consistent with the declarant's trial

testimony, and the statement "is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Additionally, "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citation omitted).[2] Prior consistent statements offered to rehabilitate credibility when a witness is impeached do not constitute hearsay because they are not offered as substantive evidence or for proof of the matter asserted. *People v Iehl*, 100 Mich App 277, 281-282; 299 NW2d 46 (1980); see also *People v Miniear*, 8 Mich App 591, 603; 155 NW2d 222 (1967) ("Moreover, since prior consistent statements are admissible for the sole purpose of rehabilitation and are not admitted in proof of the truthfulness of statements made on direct examination, there is no violation of the hearsay rule.").

In support of his argument that the circuit court improperly admitted testimony that JM made consistent out-of-court statements to investigators, defendant generally references transcript pages, including JM's testimony on redirect examination:

> *Prosecutor.* And as you've retold the story, multiple times now, have you ever failed to tell somebody that he sexually assaulted you?
>
> *JM.* No.
>
> *Prosecutor.* Have you ever failed to tell somebody that you performed oral sex on him?
>
> *JM.* I have not.
>
> *Prosecutor.* Have you ever failed to tell that he would have you masturbate him?
>
> *JM.* I have not.
>
> *Prosecutor.* And have you ever -- left out the fact that he anally penetrated you?
>
> *JM.* I have not.

This testimony is not hearsay. The prosecutor did not elicit an out-of-court assertion made by JM on how, when, and where he had been sexually assaulted in order to prove that he had been sexually assaulted in a given manner, at a particular age, and in a specific location. JM was asked

---

[2] The *Jones* Court stated that the four elements applied to the admission of a prior consistent statement through a third party. *Jones*, 240 Mich App at 707. In this case, defendant does not identify the declarant of the statement or even the content of the prior consistent statement, but just generally referenced pages from the trial transcript. This announcement of a position that leaves this Court to discover and rationalize the grounds for his claim is insufficient for the appellate well to flow. *People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016).

to affirm what he did not say, that is, that he never failed to omit from his accounts that he had been sexually penetrated, orally or anally, and that defendant had him masturbate him. Defendant opened the door to this rehabilitative testimony through his cross-examination, much of which was directed at discrediting JM by pointing out inconsistencies in his accounts of the sexual abuse, including regarding what he had told others about the number of times the particular acts occurred, where and when the sexual contact and sexual penetration first happened, and whether defendant had ejaculated. Accordingly, MRE 801(d)(1)(B) is not applicable. Therefore, defendant has failed to establish error, plain or otherwise.

Relatedly, defendant's trial attorney cannot be faulted for failing to raise a hearsay objection to JM's testimony on what he had told investigators about the sexual assaults, as such an objection would have been futile. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) (explaining that "trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile").

### III. MCL 768.27a and MRE 403

Defendant argues that MCL 768.27a violates the separation-of-powers doctrine because it overrides MRE 404(b), infringing on the Supreme Court's exclusive authority to create and change the rules of procedure and practice for Michigan courts under Const 1963, art 6, § 5. Our Supreme Court explicitly rejected this argument over a dozen years ago in *People v Watkins*, 491 Mich 450, 476-480; 818 NW2d 296 (2012). See also *People v Muniz*, 343 Mich App 437, 457-459; 997 NW2d 325 (2022); *People v Pattison*, 276 Mich App 613, 619-620; 741 NW2d 558 (2007). Defendant recognizes that we are bound by *Watkins*, but asserts that it was wrongly decided. We, however, "cannot overturn a decision of the Supreme Court" as "we are bound by the doctrine of *stare decisis*." See *People v Rivera*, 120 Mich App 50, 57; 327 NW2d 386 (1982). Accordingly, we reject defendant's invitation to declare that our Supreme Court erred in *Watkins*.

Defendant further argues the other-acts evidence was improperly admitted because any probative value it had was substantially outweighed by the danger of unfair prejudice under MRE 403. We disagree.

Evidence is considered relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." MRE 401. However, MRE 403 grants a trial court the discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In pertinent part, MCL 768.27a provides:

> [I]n a criminal case in which the defendant is accused of committing a listed sexual offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

In this case, the prosecution provided notice that it sought to admit evidence that defendant engaged JM in sexual touching in the family's home in Colorado when JM was 8. Defendant

progressed to having JM perform fellatio on him when he was 10. The trial court admitted the evidence over defendant's objection that the evidence proffered was substantially more prejudicial than probative.[3]

We review the trial court's decision for an abuse of discretion. *Watkins*, 491 Mich at 467. In *Watkins*, our Supreme Court identified the following nonexhaustive list of factors that could lead a trial court to determine that proposed other-acts evidence admissible under MCL 768.27a is overly prejudicial under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

Notably, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. at 487.

Defendant acknowledges there is some similarity between the charged acts and the uncharged other acts, but mentions that JM's testimony regarding those acts is "somewhat vague[.]" Defendant adds that there is a temporal gap between the Colorado acts in addition to the temporal gap as to the alleged abuse in Michigan. Defendant further contends that the reliability of JM's claims about the alleged prior misconduct is compromised by his multiple recantations, his inconsistent descriptions of those acts, and counterposing evidence raising uncertainty about how the alleged abuse could have occurred without detection. Additionally, the other acts evidence was unnecessary given the five acts charged in this case and the jury was likely confused about which acts could be used as evidence of guilt given that much of the other-acts evidence was about alleged events occurring in Colorado. Finally, defendant asserts that presenting evidence about the Colorado matters consumed time, causing undue delay and wasting time.

We conclude that the circuit court did not abuse its discretion by permitting the admission of evidence regarding defendant's sexual abuse of JM in Colorado. It is true that disclosure of the sexual abuse came long after the abuse started, but those two events do not evidence a lack of temporal proximity. Rather, the evidence chronicles a steady history of sexual abuse and a gradual progression of the range of abuse committed by defendant. JM described how defendant progressed from limited sexual contact, to sexual contact resulting in ejaculation, to sexual penetration, and eventually to multiple forms of penetration. Other events did occur over the years

---

[3] Defendant does not dispute that the other acts qualified as listed offenses under MCL 768.27a(2)(a) and were relevant.

of abuse, including the family moving multiple times during a nearly 10-year time frame, but those events do not constitute intervening acts.

JM's recitation of the particulars of the abuse was to some degree inconsistent and he authored a letter recanting his allegations.[4] But, as the trial court recognized, these are facts that impact a determination of JM's credibility, a matter that is left for the trier of fact to resolve. *People v Baskerville*, 333 Mich App 276, 284; 963 NW2d 620 (2020). A jury, not the court or the attorneys, "is the final judge of credibility" in a jury trial. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Further, that there were five charged acts did not mean that there was not a significant need for the prosecution to present the other acts evidence. Our Supreme Court has recognized that "[c]ommon experience indicates that sexual intercourse and attempts threat are most frequently the culmination of prior acts of sexual intimacy." See *People v Dermartzex*, 390 Mich 410, 415; 213 NW2d 97 (1973). Consequently, such evidence may impact a victim's credibility. *Id*. at 414 n 2, quoting *People v Jenness*, 5 Mich 305, 324-325 (1858). Accordingly, admitting JM's testimony about the prior acts did not result in undue delay or waste the jury's time under MRE 403.

Likewise, admitting the other acts evidence did not confuse the jury about which acts defendant was charged with committing. The trial court specifically instructed the jury that the prosecution had to prove that the charged crimes were committed in Eaton County. The court further instructed the jury that if it found that defendant actually committed the other acts, it could only "consider them in deciding if the defendant committed the offenses for which he is now on trial," and it "must not convict the defendant here solely because you think he is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime," i.e., the crimes committed in Eaton County. These instructions, which the jury is presumed to have followed, *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020), made clear that the jury was charged with determining whether defendant was guilty of the crimes allegedly occurring in Michigan. Because the trial court did not abuse its discretion in determining that the probative value of the other acts evidence was not substantially outweighed by its potential for unfair prejudice, defendant is not entitled to relief.

## IV. STANDARD 4 BRIEF

Defendant filed a Standard 4 brief in which he raises three issues. Because defendant's arguments are conclusory, we could consider them abandoned, *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017). Regardless, we conclude that they are meritless.

---

[4] We note that our Supreme Court identified delayed reporting, "recantation, accommodating the abuser or secrecy" as the types of inconsistent behavior that an expert might address in a child sexual abuse case "for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim[.]" *People v Peterson*, 450 Mich 349, 352, 373 n 12; 537 NW2d 857 (1995), amended 450 Mich 1212; 548 NW2d 625 (1995).

-7-

First, defendant contends that defense counsel performed deficiently by excluding "defendant from participating" during voir dire despite consulting with co-counsel. Defendant, however, fails to provide any evidence of when and where this alleged failure to consult occurred or how he was "excluded." Further, review of the record reflects that defendant actually interjected during the jury voir dire when he suspected one of the jurors may have known his wife. Accordingly, defendant has not met his "burden of establishing the factual predicate for his claim of ineffective assistance of counsel" and he is not entitled to relief. See *People v Hoag*, 460 Mich 1, 6-9; 594 NW2d 57 (1999). Moreover, given defense counsel's voir dire and later express satisfaction with the jury, defendant has further failed to show that he was prejudiced by any alleged failure on counsel's part. See e.g., *People v Vaughn*, 491 Mich 642, 674; 821 NW2d 288 (2012) (quotation marks and citation omitted) ("To the contrary, defense counsel actively participated in the voir dire process and expressed satisfaction with the composition of the jury and, thus, we must presume that the resulting jury was a fair and neutral fact-finder. Because [the] defendant cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, he is not entitled to relief on his ineffective assistance of counsel claim.").

Defendant next asserts that his trial counsel should have called his son BM to testify on defendant's behalf. According to defendant, BM "would have been able to impeach the credibility of the prosecutor's witness[es] and cast reasonable doubt on their claims that defendant committed these acts." Yet, defendant fails to provide any offer of proof or evidence of what BM, who defendant claims was incarcerated in county jail, would have testified to or how his testimony would have been "crucial."

Moreover, defense counsel's decision about whether to call a witness is presumed to be a matter of trial strategy. *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018). Again, review of the record shows that defendant's final witness list included nine named lay witnesses, including the victim, defendant, and BM, along with three named expert witnesses. During voir dire, the trial court named BM as one of the witnesses who might testify. On the second day of trial, defense counsel informed the trial court that he did not think he would call BM or another one of his named lay witnesses. On the fourth day of trial, after the prosecution rested and had called two of defense counsel's listed experts and the victim during its case in chief, defense counsel indicated that the defense would call defendant's parents, but only one of them would be called if he got "everything out of one" of them. Defense counsel also identified two additional named lay witnesses he would call, but defense counsel did not name BM. Finally, defense counsel stated that, after he had an opportunity to speak with defendant, he anticipated that he would call the remaining named expert witness; however, if he did not do so, he would call defendant's wife (the victim's mother). Defense counsel did not anticipate calling defendant.

The next day, the trial court placed defendant under oath. Defense counsel informed the court that "we elected not to call" three of the named lay witnesses, including BM, and the remaining named expert witness. As to the named expert witness, defense counsel confirmed with defendant that he had read the expert's report, and that, after consultation with counsel, they had decided "we're not gonna be calling" that expert. Defense counsel then presented the four lay witnesses he had named, and, outside of the jury's presence, defendant opted not to testify. Defense counsel also placed on the record that he and defendant had discussed the remaining potential witnesses and defendant personally confirmed that defense counsel had "put [on] all the

witnesses, at this point, that [defendant] desire[d] to testify[.]" Because the record reflects that defendant expressly agreed to his counsel's strategy not to present BM as a witness during trial, we conclude that defendant is not entitled to appellate relief on this claim. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Finally, defendant asserts that the prosecution committed misconduct when it knew that he was unable to subpoena BM, who was in the county jail. Defendant does not explain what it was about BM's confinement that inhibited defendant's ability to serve BM with a subpoena or assert that the defense asked for the prosecution's assistance in securing BM's presence for trial. In fact, the record contains no such request. And, as just discussed, the record reflects that defendant elected not to call BM, recognized there were other defense witnesses that could have been called, and expressed his satisfaction with the four witnesses defense counsel presented after consultation with defendant. Accordingly, defendant is not entitled to relief on this claim. *Id*.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica