PEOPLE *v.* GARDINEER.

1. WITNESSES—CREDIBILITY—IMPEACHMENT—ASSAULT WITH INTENT
    TO RAPE.
    Defense counsel's attempt to impeach credibility of mother of
        girl upon whom her defendant stepfather was charged with
        assault with intent to rape *held,* proper, where girl had testified
        it was possible her mother had told her what to say, hence,
        it was reversible error for trial court to sustain prosecutor's
        objection to defense counsel's inquiry of mother whether she
        had told her daughter what to say and admonish mother that
        if she changed her testimony she would be guilty of perjury
        under record failing to show that if the mother had been
        permitted to testify that she had, told her daughter what to
        say, she would thereby be changing her testimony under oath
        (CLS 1961, § 750.85).

2. SAME—CROSS-EXAMINATION.
    Cross-examination of a witness, devised for the discovery of
        truth, is a security for the correctness and completeness of
        testimony.

3. SAME—CONSISTENT STATEMENTS.
    Proof of consistent statements to those given by a witness on
        direct examination, without any impeachment, is unnecessary
        and valueless and would ordinarily be considered irrelevant and
        cumbersome.

4. SAME—UNIMPEACHED WITNESS—CONSISTENT STATEMENTS.
    Admission of testimony of policeman regarding prior statement
        of defendant's stepdaughter, made in the presence of de-
        fendant after bias, interest, or corruption was shown to have
        existed, was error, where her testimony at stepfather's trial
        on charge of assault with intent to commit rape upon her
        had not been impeached.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 58 Am Jur, Witnesses § 674 *et seq.*
[2] 58 Am Jur, Witnesses § 610.
[3] 58 Am Jur, Witnesses §§ 817-820.
    Admissibility, for purpose of supporting impeached witness, of
        prior statements by him consistent with his testimony. 75 ALR
        2d 909.

Appeal from Kent; Vander Wal (John D.), J. Submitted Division 3 November 4, 1965, at Grand Rapids. (Docket No. 560.) Decided February 22, 1966.

John Abraham Gardineer was convicted of assault with intent to commit rape. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Norman K. Kravitz,* Assistant Prosecuting Attorney, for the people.

*C. Blair Mohney,* for defendant.

J. H. Gillis, J. On November 18, 1964 defendant was found guilty by a jury of assault with intent to rape* and thereafter sentenced to a term of 2-1/2 to 10 years in the State prison. The alleged victim of the assault was the 13-year-old stepdaughter of the defendant.

Defendant appeals from the judgment and sentence of the court, alleging reversible error occurred during the course of the trial.

The offense allegedly occurred on April 3, 1964. The record indicates that the first complaint to the police concerning this act was August 6, 1964, some four months later. The police were called to the defendant's home on August 6, 1964, at the urgent solicitation of the defendant's wife who first complained that her husband was beating her. After the officers informed the wife that they could not arrest the defendant because they had not witnessed the act, the wife, being at the time in a highly emotional state, informed the officers of the occurrence for which the defendant presently stands convicted.

* CLS 1961, § 750.85 (Stat Ann 1962 Rev § 28.280).

At trial, the stepdaughter testified concerning acts done by the defendant from which testimony the jury could properly determine the guilt of the defendant.

On cross-examination of the stepdaughter by defense counsel, insinuations were developed to the effect that the girl testified as she did only because her mother had told her what to say in an effort to get the defendant out of the home. The defendant's attorney, in attempting to impeach the credibility of the stepdaughter, asked her on cross-examination whether or not her mother had told her what to say and to "lay it on good." The stepdaughter suggested it was possible. During the cross-examination of defendant's wife, defense counsel asked whether she had told her daughter what to say. The prosecutor objected and was sustained by the court. At this point the court admonished the wife that if she changed her testimony, she would be guilty of perjury.

The record does not indicate that if the mother had been permitted to testify that she had told her daughter what to say, she would thereby be changing her testimony under oath.

The credibility of the stepdaughter was certainly a material issue, and the attempt of defense counsel to impeach her credibility was proper.

Cross-examination was a distinctive feature of the English trial system, and the one which most contributed to the prestige of the institution of jury trial. It is a security for the correctness and completeness of testimony. Cross-examination is the most efficacious test which the law has devised for the discovery of truth.

It was reversible error for the trial court to restrict counsel's cross-examination of the mother concerning whether or not she had told her daughter

what to say. See *Geary* v. *People* (1871), 22 Mich 220.

Defendant further contends that the trial court committed reversible error in permitting a police officer to relate the substance of a statement he had taken from the stepdaughter in the presence of the defendant on September 1, 1964. This testimony was objected to by defendant.

The statement as related by the police officer was consistent with the testimony of the stepdaughter given at trial. The people contend the purpose of this testimony was to corroborate the testimony which the stepdaughter had given earlier during the trial.

Professor Wigmore, in his exhaustive treatise on the law of evidence, considers this method of rehabilitating or supporting a witness' testimony by proof of a prior consistent statement.

"When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial; and is rejected in all courts." 4 Wigmore on Evidence (3d ed), § 1124, p 194.

There are exceptions to this rule. The one applicable to the instant case reads:

"A consistent statement, at a *time prior* to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence; because it is thus made to appear that the statement in the form now uttered was independent of the discrediting influence. The

former statements are therefore admissible." 4 Wigmore on Evidence (3d ed), § 1128, p 203.

In the case at bar, the officer was permitted to testify to a statement made to him by the stepdaughter on September 1, 1964. The bias, interest, or corruption alleged by the defendant as the motive for the stepdaughter's testimony existed at least as early as August 6, 1964. Thus, it is apparent that the statement was uttered *after* the alleged bias, interest, or corruption was in existence. This testimony does not fall within that class of cases which are recognized as exceptions to the rule excluding proof of prior consistent statements and should have been rejected.

This rule of evidence is well covered in the opinion of Justice COOLEY in *People* v. *Stewart* (1871), 23 Mich 63 (9 Am Rep 78). See, also, those cases cited in 140 ALR 21.

This cause is remanded for a new trial in accordance with the provisions of this opinion.

HOLBROOK, P. J., and BURNS, J., concurred.