BROWN v POINTER

OPINION OF THE COURT

1. JUDGMENT—SUMMARY JUDGMENT—WITNESSES—CREDIBILITY—FAC-
TUAL ISSUE.

Summary judgment should not be granted whenever a presented
issue of material fact turns upon the credibility of a witness or
affiant, thereby making credibility a crucial factor.

2. JUDGMENT—SUMMARY JUDGMENT—WITNESSES—CREDIBILITY—AUTO-
MOBILES—OWNERSHIP.

Summary judgment for defendant corporation was properly de-
nied where a disputed issue of material fact regarding the
ownership of an automobile turned upon the credibility of the
persons signing affidavits that defendant was not the owner as
balanced against the presumption created by plaintiff's intro-
duction of the certificate of title containing defendant's name.

3. WITNESSES—IMPEACHMENT—PRIOR CONSISTENT STATEMENTS—AD-
MISSIBILITY.

Prior consistent statements of an impeached witness are admissi-
ble to rehabilitate him where he was impeached on the ground
of having had a motive for recently changing or falsifying his
testimony and where his earlier consistent statements were
given at a time prior to the existence of any fact which would
motivate his bias, interest, or corruption.

4. WITNESSES—IMPEACHMENT—PRIOR CONSISTENT STATEMENTS—AD-
MISSIBILITY.

Testimony by an investigator for the Motor Vehicle Accident
Claims Fund regarding a witness's statements to him, three

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur, Pleading §§ 340–343.
[3] 53 Am Jur, Witnesses § 774.
[4] 53 Am Jur, Witnesses §§ 774, 781.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 24, 996.
[5, 6] Presumption and prima facie case as to ownership of vehicle
causing highway accident, 27 ALR2d 167.
[6] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 996, 997.

months prior to plaintiff's suit, which upheld the witness's trial testimony that he did not fill in his name on the back of the certificate of title to a 1962 Oldsmobile was admissible to rehabilitate the witness whose testimony had been impeached by his prior inconsistent statements contained in his executed sworn affidavit filed in support of defendant's motion for summary judgment.

5. Automobiles—Transfer—Delivery—Certificate of Title—Simultaneous Delivery.

An instruction that defendant was required to prove affirmatively that the certificate of title to a 1962 Oldsmobile involved in a collision was delivered to the transferee at the time of delivery of the vehicle to him in order to establish that ownership of the vehicle had passed, was error; the Motor Vehicle Code does not require simultaneous delivery of title and vehicle in order to effectuate a valid transfer of ownership (MCLA 257.233[d]).

Dissent by O'Hara, J.

6. Automobiles—Transfer—Delivery—Title—Dispute—Question for Jury.

Question of if and when a certificate of title to, and possession of, a 1962 Oldsmobile were transferred, so as to effectuate a valid transfer of ownership, presented a question of fact for the jury where witnesses contradicted each other and the certificate of title was never produced.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 February 29, 1972, at Lansing. (Docket No. 11829.) Decided June 27, 1972. Leave to appeal granted, 388 Mich 780.

Complaint by Cleo Brown, administratrix of the estate of Susan E. Brown, against Charles W. Pointer, James Gallagher, Ramona F. Gallagher, Farm Bureau Company, Michigan Motor Vehicle Accident Claims Fund, Ramon Hernandez, and Associates Discount Corporation for a declaratory judgment to determine ownership of an automobile involved in collision in which plaintiff's decedent was killed. Judgment that Associates Dis-

count Corporation was owner of the automobile. Associates appeals. Reversed.

*Abood, Abood & Abood, P. C.,* for plaintiff.

*Foster, Lindemer, Swift & Collins (by David C. Coey),* for Associates Discount Corporation.

*H. James Starr,* for defendants Pointer and Michigan Motor Vehicle Accident Claims Fund.

*Willingham & Cote, P. C.* (by *Raymond J. Foresman, Jr.),* for defendant Farm Bureau.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,* JJ.

J. H. GILLIS, J. This is an appeal taken from a declaratory judgment proceeding, the action being instituted in order to determine ownership of a motor vehicle for purposes of assessing liability under the Michigan Vehicle Code.

Plaintiff's decedent was killed in a motor vehicle collision on April 13, 1969. The deceased was a passenger in a car owned by defendant James Gallagher and driven by defendant Ramona Gallagher. The Gallagher vehicle collided with a 1962 Oldsmobile driven by defendant, Charles W. Pointer, bearing license plates issued to Pointer for a 1961 Ford. The last registered owner of the 1962 Oldsmobile immediately prior to the accident date as contained in the records of the title and registration division of the office of the Michigan Secretary of State was defendant-appellant Associates Discount Corporation. Associates disclaimed ownership of the vehicle as of the accident date on

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the basis that it had sold the car and transferred title for it to one Ramon Hernandez on January 13, 1969.[1] The title document which allegedly transferred title on that date was lost. Testimony at trial centered around the focal issue of whether Associate Discount Corporation had complied with the applicable provisions of the Michigan Vehicle Code in order to effectuate a valid transfer of title. The pertinent statutory sections are as follows:

"(d) The owner shall indorse on the back of the certificate of title an assignment thereof with warranty of title in the form printed thereon with a statement of all security interests in said vehicle or in any accessory thereon, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver or cause the same to be mailed or delivered to the department or to the purchaser or transferee at the time of the delivery to him of such vehicle, which shall show the payment or satisfaction of any security interest as shown on the original title." MCLA 257.233(d); MSA 9.1933(d).

"The owner of a motor vehicle who has made a bona fide sale by transfer of his title or interest and who has delivered possession of such vehicle and the certificate of title thereto properly endorsed to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another." MCLA 257.240; MSA 9.1940.

The 1962 Oldsmobile driven by Charles Pointer on April 13, 1969, came into the possession of Associates Discount on November 19, 1968, as a result of its repossession from a third party due to a default in monthly installment payments. After repossession, Associates Discount filed an affidavit

---

[1] Though Ramon Hernandez was not joined as a party defendant in the original complaint in this action, he was added as a defendant in plaintiff's amended complaint of May 27, 1970. However, plaintiff, being unable to serve Hernandez with summons and complaint as of the time of trial, elected to proceed without him as a party.

of repossession with the office of the Secretary of State and was issued a repossession of title. The vehicle was stored in a lot run by Great Lakes Recovery Service, which was in the business of repossessing automobiles. Patrick Waters, an employee of Great Lakes, testified that Ramon Hernandez offered to purchase the vehicle in question, and, consequently, an order for purchase was filled out in the name of Mr. Hernandez and submitted to Associates Discount. Witness Waters' testimony was equivocal with respect to whether he saw Hernandez sign the order, whether he saw the title notarized at Associates Discount's office and whether he saw Associates Discount's employee sign the title. James Stoyanovich, an employee of Associates Discount, testified he accepted the order, signed the transfer portion of the repossession title, had his own signature notarized, placed Mr. Hernandez's name as transferee on said title, and turned the document over to Waters for delivery to Hernandez. Witness Hernandez testified that when he received the certificate of title from Waters he did not observe his name typed or printed on the back of it, nor had he himself ever filled in his own name on it, and that he had never signed the purchase order for the vehicle in question. Hernandez further stated that he received the certificate of title from Waters several days after obtaining possession of the 1962 Oldsmobile. This statement was contradicted by Waters who testified that the automobile and title were turned over to Hernandez on the same day though he was not certain whether this occurred on January 13th or 14th. In the latter part of January, 1969, Hernandez traded the Oldsmobile to Charles Pointer, delivering to him both the vehicle and the repossession title. Pointer kept possession of the vehicle, but, subsequently, left the certificate of title at

Hernandez' house allegedly because it was not indorsed by Associates Discount Corporation. Hernandez testified he did not receive the certificate of title.

The jury ultimately returned a verdict against defendant Associates Discount Corporation, in effect, determining that it was the title owner of the motor vehicle in question on the date the fatal accident occurred. From this verdict defendant-appellant brings the present appeal asserting four grounds for reversible error, the last of which is without merit.

On April 17, 1970, plaintiff filed a motion for summary judgment against defendant-appellant asserting that no genuine issue of fact existed regarding the issue of ownership of said 1962 Oldsmobile on April 13, 1969. Attached to this motion was a certified copy of the repossession certificate of title from the Michigan Secretary of State's office establishing Associates Discount as the last registered owner of the vehicle prior to the accident date, thereby constituting *prima facie* evidence that it was the owner of said Oldsmobile on April 13, 1969. On May 20, 1970, defendant Associates Discount Corporation filed a motion for summary judgment supported by the affidavits of Waters, Stoyanovich and Hernandez, the cumulative effect of which asserted that Associates Discount had done all those things required of it by § 233 of the Michigan Motor Vehicle Code to have effected a transfer of ownership of the Oldsmobile to Ramon Hernandez prior to the accident date of April 13, 1969.[2] See appendix. No affidavits, exhibits or other evidence were filed by any party disputing the asserted facts in the affidavits sup-

---

[2] Hernandez was to later testify at trial that his affidavit, relied upon by Associates Discount, was not true.

porting Associates Discount's motion for summary judgment. Nevertheless, after argument, immediately prior to the opening of trial, Associates Discount's motion was denied. Defendant-appellant asserts, as its first ground for reversal, that the trial court erred in refusing to grant its motion for summary judgment, there being no genuine issue of fact existing as to ownership.

The conclusion that defendant-appellant requested the court to reach without a trial was in direct conflict with the presumption created by the certificate of title presented to the court with plaintiff's motion for summary judgment. This Court has repeatedly adhered to the proposition that the purpose of summary judgment is not to force the parties to try a case by affidavit—that one has a right to trial where there is a disputed issue of fact. *Sun Oil Co v Rosborough,* 6 Mich App 176, 179 (1967). Consequently, whenever a presented issue of material fact turns upon the credibility of a witness or affiant, thereby making credibility a crucial factor, summary judgment should not be granted. *Arber v Stahlin,* 382 Mich 300, 309 (1969); *Durant v Stahlin,* 375 Mich 628, 647–648 (1965). As the Court in *Durant* so aptly put it:

"[W]hen resolution of a disputed issue of fact, presented by conflicting affidavits or other proofs, depends upon the credibility of an affiant or witness, the trial judge engaged in an inquiry on motion for summary judgment must not usurp a trial jury's right, nor may he anticipate his own right as the trial fact finder, if such he may become later at trial, to determine the affiant's credibility. Judge Frank, in *Arnstein v Porter,* 154 F2d 464 (CA 2, 1946), a copyright infringement suit, emphasized the impropriety of granting summary judgment where the credibility of an affiant may be crucial to decision of a disputed fact issue thus presented notwithstanding the opposing party's failure to attempt

even to discredit the honesty of affiant by counter-affi-
davits or other proofs. Quite properly, we believe, Judge
Frank underscored the importance of cross-examination
at trial when the fact-finding process may turn upon
the credibility of a witness (pp 469, 471):

" 'But even if we were to disregard the improbable
aspects of plaintiff's story [contained in a deposition],
there remain parts by no means "fantastic." On the
record now before us, more than a million copies of one
of his compositions were sold; copies of others were sold
in smaller quantities or distributed to radio stations or
band leaders or publishers, or the pieces were publicly
performed. If, after hearing both parties testify, the
jury disbelieves defendant's denials, it can, from such
facts, reasonably infer access. It follows that, as credi-
bility is unavoidably involved, a genuine issue of mate-
rial fact presents itself. With credibility a vital factor,
plaintiff is entitled to a trial where the jury can observe
the witnesses while testifying.

" 'But where, as here, credibility, including that of
the defendant, is crucial, summary judgment becomes
improper and a trial indispensable. It will not do, in
such a case, to say that, since the plaintiff, in the
matter presented by his affidavits, has offered nothing
which discredits the honesty of the defendant, the
latter's deposition must be accepted as true. We think
that Rule 56 was not designed thus to foreclose plain-
tiff's privilege of examining defendant at a trial. espe-
cially as to matters peculiarly within defendant's
knowledge.'

"See, also, *Colby v Klune,* 178 F2d 872 (CA 2, 1949),
and *Bozant v Bank of New York,* 156 F2d 787, 790 (CA
2, 1946)."

The Court ultimately concluded, pp 649–650:

"By insisting that summary judgment is not available
whenever a presented issue of material fact turns upon
the credibility of an affiant or witness whose deposition
has been taken, we intend thereby to limit severely the
circumstances in which summary judgments properly
may be entered. The alternative would require our

abandonment of what has been called the 'truth-testing process of cross-examination' and would encourage unwarranted invasion by judges of the jury's exclusive province. *United States v United Marketing Association,* 291 F2d 851, 853–854 (CA 8, 1961)."

The rationale set forth in *Durant, supra,* is particularly appropriate to the case at hand as exemplified by the fact that the trial testimony of Ramon Hernandez differs substantially from the statements which appear in his affidavit. In view of the fact that there was before the trial court a disputed issue of material fact which turned upon the credibility of affiants, we hold the trial court was perfectly justified in denying defendant Associates Discount's motion for summary judgment.

We now turn our attention to defendant-appellant's second asserted ground for reversible error: Whether the trial court erred in permitting an investigator for defendant Motor Vehicle Accident Claims Fund to testify as to prior consistent statements of Ramon Hernandez whose testimony at trial had been impeached by his prior affidavit, where the investigator's testimony was admitted for the sole purpose of rehabilitating witness Hernandez. On direct testimony in behalf of the Motor Vehicle Accident Claims Fund, Hernandez testified, contrary to his affidavit, that he did not fill in his name on the back of the certificate of title, did not recall seeing his name there, and never signed the purchase order for the vehicle in question. He stated that the statements in his prior affidavit were untrue. The affidavit was subsequently introduced as an exhibit by counsel for the Motor Vehicle Accident Claims Fund. On cross-examination by counsel for defendant-appellant, his testimony was impeached by the prior inconsistent statements contained in his executed sworn affida-

vit of May 7, 1969, filed in support of Associates Discount's motion for summary judgment.

After the completion of Hernandez' testimony, the Motor Vehicle Accident Claims Fund then called as its next witness Wayne Walters, one of its investigators, who as part of his investigation of this claim interviewed Hernandez on September 22, 1969, approximately five months after the fatal accident and three months before the commencement of this suit. Over objection by defendant-appellant, Walters was permitted to testify as to statements made to him during that interview which substantially corroborated Hernandez' testimony at trial.

Michigan permits the admissibility of prior consistent statements in order to rehabilitate an impeached witness if (1) the impeachment of the sworn testimony attacked the witness as having had a motive for changing or falsifying his testimony so as to have been of recent contrivance or fabrication, and (2) if the earlier consistent statement was given at a time prior to the existence of any fact which would motivate bias, interest, or corruption. *People v Miniear,* 8 Mich App 591 (1967); *People v Gardineer,* 2 Mich App 337 (1966). In considering whether the above conditions were present in the case at bar, it is important to note that the jury was well aware that when the affidavit was signed by Hernandez, a suit for damages had not been commenced. It was also apparent that by signing the affidavit, Hernandez had placed himself in the position where he might well be determined to be the owner of the vehicle. Certainly once suit had been commenced and Hernandez called to testify, there was ample motive for him to deny the validity of the affidavit and attempt to place the ownership of the vehicle upon

the appellant. Even though Hernandez was dropped as a party defendant in the presence of the jury, it was obvious the question of ownership could have a substantial effect upon him. The inference of this motive for recent fabrication was suggested when on recross-examination of Hernandez by counsel for Associates Discount, the following colloquy transpired:

"*Q.* Okay. And as a matter of fact, the real reason that you signed that affidavit, and the reason you wanted to sign that affidavit is because you wanted to make sure that you were setting forth the fact that you had transferred the title to Mr. Pointer, isn't that right?

"*A.* No, sir.

"*Q.* But that was, that's really the sum and substance of your affidavit isn't it?

"*Mr. Abood [Counsel for plaintiff]:* Objection, your Honor.

"*Mr. Coey [Counsel for defendant-appellant]:* Do you want the affidavit?

"*The Court:* This is cross-examination, Mr. Abood. He may show any interest that may have affected this individual's conduct in testimony here today.

"*Q. [By Mr. Coey, continuing]:* I'd like to refer you to the second paragraph there.

(Thereupon, the witness examined the exhibit.)

"*Q. [By Mr. Coey, continuing]:* And that concerns your transferring the car to Mr. Pointer, doesn't it?

"*A.* Yes, sir, but they had asked me—

"*Q.* Just answer my question. Isn't that right, sir?

"*A.* Yes, sir."

The inference manifested itself in more blatant terms when counsel for Associates Discount, in closing argument, argued to the jury that Hernandez was "very definitely interested in not being found the owner of this car", but at the time of the

signing of the affidavit was trying to "pass the ball to Mr. Pointer".

Turning to a consideration of whether the earlier consistent statement was elicited before a motive for fabrication existed, the trial court took particular cognizance of the fact that the conversation between Waters and Hernandez occurred three months prior to the commencement of this suit. In light of this, the trial judge believed no motive for fabrication existed in September, 1969. We find no evidence that the court abused its discretion,[3] and, therefore, conclude no error was caused by allowing the testimony in question.

Finally, we turn to a consideration of Associates Discount's third alleged ground of reversible error: Whether the trial court erred in instructing the jury that defendant Associates Discount was required to affirmatively prove that the certificate of title was delivered to the transferee at the time of delivery of the vehicle to him in order to establish that it had passed ownership of the vehicle? The trial court, in instructing the jury as to the issues it must resolve in order to establish compliance with MCLA 257.233(d); MSA 9.1933(d), and, hence, determine ownership of the Oldsmobile as of April 13, 1969, instructed as follows:

"Was the certificate of title with the assignment certificate, the assignment information and other information required by the statute, delivered to the pur-

---

[3] In discussing the standard for review in such a situation, the Court in *People v Stewart,* 23 Mich 63, 76 (1871), stated: "It is impossible to lay down any arbitrary rule which could be properly applied to every case in which this question could arise. * * * We think the circuit judge ought to be allowed a reasonable discretion in such cases, and that though such evidence should not generally be received, yet that his discretion in receiving it ought not to be set aside except in a clear case of abuse such as, we think, did not exist here."

chaser or transferee at the time of the delivery of the vehicle to him?"

And again:

"Was the certificate of title, together with the assignment on the reverse side thereof, delivered to the purchaser or transferee at the time of the delivery to him of the vehicle?"

And finally:

"If Associates Discount Corporation has demonstrated and proven to you by a preponderance of the evidence the affirmative of each of those three sub-issues, then it is entitled to a verdict from you to the effect that it was not the owner of this Oldsmobile vehicle on the date in question. If, on the other hand, Associates Discount Corporation has not demonstrated and proven to you by a preponderance of the evidence any one or more of those three sub-issues, then your verdict must be against Associates Discount Corporation."

At the close of the trial court's instructions, counsel for Associates Discount objected to the instructions set out above on the ground that MCLA 257.233(d); MSA 9.1933(d), does not require the simultaneous delivery of title and vehicle in order to effectuate a valid transfer of ownership. The trial court did not act upon the objection.

In *Schomberg v Bayly,* 259 Mich 135 (1932), the Supreme Court considered an identical issue to that here raised in light of the then existing motor vehicle code. The pertinent statutory provision in *Schomberg* (1929 CL 4460) and the language used in the present motor vehicle code, MCLA 257.233(d); MSA 9.1933(d), regarding the time when title and physical possession of the vehicle must pass are identical; both require delivery of the assigned certificate of title to the purchaser

"at the time of the delivery to him of such vehicle". The Court in *Schomberg* concluded that delivery of the certificate of title prior to the time of the accident was adequate to relieve a previous owner of liability from negligent operation of the vehicle. The Court refused to permit the plaintiff to benefit from a slight delay in compliance with statutory requirements when there had been substantial compliance with the statute. Likewise, we feel that common sense dictates that a party who has done everything necessary to transfer title, but, has failed to deliver the certificate of title at the exact time of delivery of the vehicle, should be protected from liability for subsequent negligent operation of the automobile.

Reviewing the testimony presented at trial regarding this issue, it is noted there was conflicting testimony with respect to whether physical possession and the certificate of title passed on the same day. It is apparent that the jury could well have believed the witnesses of Associates Discount regarding compliance with all other provisions of MCLA 257.233(d); MSA 9.1933(d), yet disbelieved the testimony that the certificate of title passed the same day the car was delivered. A jury is entitled to believe all, part, or none of a witness's testimony. If the above did occur (that is, the jury believed that the transfer of the certificate and the automobile did not occur simultaneously) the jury, in following the trial court's instructions, would be required to return a verdict against Associates Discount. Consequently, we conclude the trial court's instructions were grounds for reversible error.

Reversed. Costs to appellant.

McGREGOR, P. J., concurred.

## APPENDIX

"Patrick L. Waters, being first duly sworn, deposes and says that he resides at 900–22nd Street, Detroit, Michigan, and that immediately prior to January 13, 1969, a certain 1962 Oldsmobile, No. 625M17622 was in his possession at his place of business located at 900–22nd Street, said motor vehicle being stored at that location by Associates Discount Corporation, the then owner of said motor vehicle. On January 13, 1969, he did speak with Ramon Hernandez and did make arrangements for the sale of said automobile by Associates Discount Corporation to Ramon Hernandez. Physical possession of the automobile was delivered to Ramon Hernandez on that day."

"James L. Stoyanovich, being first duly sworn, deposes and says that he is employed by Associates Discount Corporation at the Lincoln Park office of Associates Discount Corporation and was so employed in January of 1969. That on January 13, 1969, Patrick L. Waters did bring to your deponent a written Order for Used Cars executed by Ramon Hernandez offering to purchase a certain 1962 Oldsmobile, Identification No. 625M17622 for the sum of $50.00 along with $50.00 in cash. Your deponent did accept the same from Mr. Waters and did endorse the Certificate of Title which was in the name of Associates Discount Corporation by signing the same on behalf of Associates Discount Corporation and causing his signature to be notarized, and did deliver said Certificate of Title and endorsement to Mr. Waters with the understanding and belief that Mr. Waters would deliver the same to Mr. Hernandez along with delivery of said automobile to Mr. Hernandez."

"Ramon Hernandez, being first duly sworn, deposes and says that he resides at 924–24th Street, Detroit, Michigan. On January 13, 1969, he did purchase a certain 1962 Oldsmobile, Identification No. 625M17622, from Associates Discount Corporation through Mr. Waters. Your deponent states that on January 13, 1969, he did sign an Order for Used Cars offering to purchase the same, to pay the sum of $50.00, and did receive possession of said automobile together with the Certificate of Title which was in the name of Associates

Discount Corporation endorsed on the reverse side thereof by an individual signing on behalf of Associates Discount Corporation and the notary endorsement thereon. Your deponent further states that he did complete the reverse side of said Certificate of Title by filling in the name of Ramon Hernandez as purchaser thereon and showing his address at 924–24th Street, Detroit, Michigan.

"Your deponent further states that about the last week in January, 1969, he did agree to sell said motor vehicle to Charles W. Pointer. The said Charles W. Pointer did pay to your deponent the agreed purchase price of said automobile and the said Charles W. Pointer did take possession of the aforesaid Certificate of Title and agree to take the same to the office of the Secretary of State, file the same with the Secretary of State, and did agree to return to the abode of your deponent at such time as the Secretary of State had issued title in the name of your deponent and deliver the same to your deponent so that your deponent would be able to transfer the Certificate of Title to the said Charles W. Pointer. Although Mr. Pointer left the premises with the Certificate of Title and the automobile, he has never returned."

O'HARA, J. *(dissenting)*. I view the controlling issue in this case somewhat differently than do my colleagues.

The majority opinion reverses on the ground of erroneous instructions. I do not agree.

The trial judge instructed the jury almost verbatim in the words of the statute. It is true that appellant objected to the instructions as given and properly preserved the objection.

I do not, however, find a requested instruction on the precise point upon which reversal is founded, namely what "at the time of delivery to him", as used in the statute, means. The judge certainly could not charge under the holding in *Schomberg v Bayly,* 259 Mich 135 (1932), cited by the majority.

In *Schomberg* the accident occurred on June 24. On June 20 the concerned defendant, four days *before* the accident, delivered the properly executed assignment-certificate to the Detroit branch office of the Secretary of State. All of the controversy as to the claimed liability of the five defendants arose *after* the assignment was admittedly made. The question there was who was liable for damages inflicted by the negligent operation of the involved motor vehicle in the interim between the time at which the buyer applied for a new registration and the time at which he received it. I am not at all sure that *Schomberg* is relevant, much less controlling.

In simple substance, this case presented a classical disputed question of fact as to which witnesses not only contradicted each other, but one witness contradicted himself. I think the trial judge did exactly what he should have done, submitted the whole thing to the jury.

Be it remembered that in this case the involved title was never produced nor admitted as an exhibit at trial. The question here was not only *when* delivery of a properly executed title was made but whether the assignment was even properly executed in the first place. This is exactly the issue that the trial judge placed before the jury in his charge.

I vote to affirm.