THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PAUL SINGER, Appellant.

Argued November 21, 1949; decided December 29, 1949.

*Edward H. Levine* and *Arnold D. Roseman* for appellant. I. The guilt of appellant was not established beyond a reasonable doubt. (*People* v. *Taddio,* 292 N. Y. 488; *People* v. *Lewis,* 275 N. Y. 33; *People* v. *May,* 290 N. Y. 369; *People* v. *Galbo,* 218 N. Y. 283; *People* v. *Weiss,* 290 N. Y. 160; *People* v. *Razezicz,* 206 N. Y. 249; *People* v. *Suffern,* 267 N. Y. 115; *People* v. *Fitzgerald,* 156 N. Y. 253.) II. Reversible error was committed by the trial court in receiving into evidence plaintiff's medical exhibits and in permitting them to be taken into the jury room while the jury was deliberating. (*People* v. *Marendi,* 213 N. Y. 600; *People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Corey,* 148 N. Y. 476; *People* v. *Silverman,* 252 App. Div. 149; *Allen* v. *Stokes,* 260 App. Div. 600; *Smith* v. *Lehigh Valley R. R. Co.,* 177 N. Y. 379; *People* v. *Garrett,* 285 N. Y. 810; *People* v. *Cullen,* 290 N. Y. 667; *People* v. *Gillette,* 191 N. Y. 107.) III. The trial court committed reversible error when it received into evidence over objection a so-called prior

consistent statement of the accomplice. (*Robb* v. *Hackley & Welton,* 23 Wend. 50; *People* v. *Edwards,* 282 N. Y. 413; *People* v. *Katz,* 209 N. Y. 311; *People* v. *Collier,* 141 App. Div. 111; *Dechert* v. *Municipal Elec. Light Co.,* 39 App. Div. 490; *Hill* v. *Erie R. R. Co.,* 225 App. Div. 19.) IV. The accomplices were not corroborated and the trial court committed reversible error in its charge on the law of corroboration. (*People* v. *Corbisiero,* 290 N. Y. 191; *People* v. *Nitzberg,* 287 N. Y. 183; *People* v. *Maione,* 284 N. Y. 423; *People* v. *Kress,* 284 N. Y. 452; *People* v. *Mullens,* 292 N. Y. 408; *People* v. *Hooghkerk,* 96 N. Y. 149.)

*Frank S. Hogan, District Attorney* (*Whitman Knapp* and *Peyton H. Moss* of counsel), for respondent. I. Defendant's guilt was proven beyond a reasonable doubt. (*People* v. *Place,* 157 N. Y. 584; *People* v. *Harris,* 136 N. Y. 423.) II. The accomplice testimony was sufficiently corroborated. (*People* v. *Goldstein,* 285 N. Y. 376; *People* v. *Dixon,* 231 N. Y. 111; *People* v. *Mayhew,* 150 N. Y. 346; *People* v. *Elliott,* 106 N. Y. 288.) III. The charge as to corroboration was proper. (*People* v. *Henderson,* 298 N. Y. 462; *People* v. *Goldstein,* 285 N. Y. 376; *People* v. *Dixon,* 231 N. Y. 111.) IV. The medical exhibits were properly received in evidence. (*People* v. *Gillette,* 191 N. Y. 107; *Evans* v. *United States,* 122 F. 2d 461; *Miranda* v. *State,* 42 Ariz. 358; *State* v. *Sweet,* 101 Kan. 746; *People* v. *Cullen,* 290 N. Y. 667; *People* v. *Garrett,* 285 N. Y. 810; *People* v. *Harris,* 219 Cal. 727; *Commonwealth* v. *Di Stasio,* 294 Mass. 273.) V. The prior consistent statement of the accomplice was properly received. (*People* v. *Edwards,* 282 N. Y. 413.)

DESMOND, J. Defendant, convicted of manslaughter in the first degree (Penal Law, § 1050) and abortion (Penal Law, § 80) argues in this court: first, that his guilt was not established beyond a reasonable doubt; second, that there was neither sufficient corroboration of the accomplice testimony nor a proper charge by the court on the subject; third, that it was error to allow the exhibition before the jury of mangled parts of a fetus and parts of the organs of the aborted woman; and, fourth, that it was error to receive into evidence proof of a prior extra-judicial "consistent statement" made by the accomplice-witness Schneidewind. We reject each of those contentions, but find it necessary to comment on the fourth point, only.

Schneidewind, at the trial, gave testimony most damaging to defendant. When cross-examined, he admitted that when he (Schneidewind) had first appeared before the grand jury as a witness, on November 12, 1947, four weeks after the abortion, he had made statements utterly at variance with his trial testimony, and not inculpating defendant at all. Previously, when giving his evidence in chief at the trial, he had told the jury that he, with defendant and another accomplice had, just after the abortion, gotten together and concocted the false story. Later, during Schneidewind's cross-examination, it was brought out that after his first (November 12, 1947) grand jury appearance, he was taken into custody and that he then went again before the grand jury on November 14, 1947, and that on that second occasion he recanted, and gave the grand jury the same version of the occurrence that he related in his direct testimony on this trial. During this cross-examination of Schneidewind, defense counsel brought out the fact that Schneidewind, although guilty on his own story, had not been indicted. By those and other questions, the defense at least suggested to the jury that Schneidewind hoped for clemency for himself, and that his trial testimony was a fabrication, as a reward for which he hoped to go unwhipped of justice.

The prosecutor then called as a rebuttal witness the father of the victim of the abortion. Over objection, the father was permitted to tell the jury that, on the day following the abortion (thirteen months before the trial), Schneidewind had told the father the same things that he told the jury on this trial, as to his (Schneidewind's) and defendant's complicity in the abortion.

Defendant argues to us that this rebuttal testimony of the father was an illegal buttressing of Schneidewind's sworn trial testimony by a showing of previous extrajudicial, unsworn statements of like import. The contention is that this rebuttal did not come within the exception to the hearsay rule, stated by this court in *Ferris* v. *Sterling* (214 N. Y. 249, 254), *People* v. *Edwards* (282 N. Y. 413, 416) and *Crawford* v. *Nilan* (289 N. Y. 444, 450) as follows: " where the testimony of a witness is assailed as a recent fabrication, it may be confirmed by proof of declarations of the same tenor before the motive to falsify existed." Defendant says that two essential bases for the

application of that exception are missing here: first, in that Schneidewind's trial testimony was not claimed by the defense to have been a *recent* fabrication, since it was the same story he had told before the grand jury a year earlier, and also at an earlier trial of this very case; and, second, in that, according to defendant, there was no sufficient accusation or showing here of any motive to falsify, arising after the disclosure to the father and before the first telling of Schneidewind's present version of the facts. We think both conditions necessary for the use of the exception, were fairly present here.

Of course, if the word " recent " in this court's formulation of the exception, in the cases above cited, means that the witness' statements at the trial must have been assailed as having been fabricated at some point just before the trial, this was no case for applying the exception. But we think that " recent " as so used, has a relative, not an absolute meaning. It means, we think, that the defense is charging the witness not with mistake or confusion, but with making up a false story well after the event (see *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 250). "Recently fabricated " means the same thing as fabricated to meet the exigencies of the case (see Judge WERNER's discussion in *People* v. *Katz,* 209 N. Y. 311, at p. 340). Judge HAND, in *Di Carlo* v. *United States* (6 F. 2d 364, 366), after careful examination of authorities and reasons, stated the exception thus: " that, when the veracity of a witness is subject to challenge because of motive to fabricate, it is competent to put in evidence statements made by him consistent with what he says on the stand, made before the motive arose." We think that well describes the situation in this case, and that the father's evidence was properly received, to refute the inference urged by the defense, that Schneidewind was testifying at the trial under the influence of a motive which prompted him to falsify. Defense counsel was obviously trying to get the jury to conclude that Schneidewind was motivated by a hope, still strong at the time of trial, that he would be favorably treated because of his co-operation with the prosecutor. Of course, in this instance, Schneidewind, before the girl's father was called to the witness stand, had told the exculpating story at least twice and the damaging story at least three times, but nonetheless, it was the

defense's position that he had made up the latter to save his own skin, and so the exception came into play, and it was for the jury to choose between the two versions, after a full disclosure of all the times and occasions on which each had been put forward by Schneidewind. All this accords with the view anciently expressed in Evans' Pothier on Contracts (Vol. II, 1826, pp. 251–252) that the idea of fabrication may be rebutted " by circumstances shewing that the motive upon which it is supposed to have been founded, could not have had existence at the time when the previous relation was made, and which therefore repel the supposition of the fact related being an afterthought or fabrication ". (See, also, *King* v. *Parker,* decided in 1783, and annotated in 3 Douglas 242, 244, and 1 Starkie, Law of Evidence [1826], p. 148.)

The testimony of the girl's father, when received, illustrated the justice and soundness of the exception, since the father told the jury that Schneidewind, at the hospital, when the girl was near death, disclosed his own and defendant's guilt, in urging the father to dismiss defendant as his daughter's physician.

The judgment should be affirmed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and BROMLEY, JJ., concur.

Judgment affirmed.