■ The People of the State of New York, Respondent, v. Frank Peterson and Kenneth G. Cender, Appellants.— Appeal by defendants from judgments of the Supreme Court, Richmond County, rendered November 4, 1964 after a jury trial, convicting each of them of eight counts of robbery in the first degree (armed), and imposing sentences. As to defendant Kenneth Cender, judgment affirmed. As to defendant Frank Peterson, judgment reversed on the law and the facts and in the interests of justice and a new trial granted. On January 18, 1964 three masked men armed with a rifle, shotgun and starter's pistol entered a bar and robbed its owners and customers after having handcuffed them in a basement kitchen. Appellants, together with one Stephen Cender, were jointly indicted for the robberies. Although when arrested on January 22, 1964 Stephen Cender was concededly found in possession of a watch taken from one of the robbery victims, the jury was unable to reach a verdict concerning him. Upon appellants' trial the People sought to establish their guilt principally by means of identification witnesses, evidence showing appellant Kenneth Cender's purchase and possession of the rifle and shotgun, and appellant Peterson's allegedly recanted confession. In the case of appellant Cender, one wholly unimpeached witness, Dominick Carbonari, positively identified Cender, who was equally identified by the witness James Laurie. In addition, proof was given that, on January 17, 1964, appellant Cender purchased a 12-gauge shotgun and Italian rifle identified as the types of weapons used by the robbers. Although the seizure of the shotgun and rifle was made under circumstances suggesting an unlawful search, no motion to suppress was made and, consequently, appellant Cender's constitutional objection was waived (Code Crim. Pro., § 813-d). In our opinion, a police artist's sketch based upon descriptions received from the two owners of the bar was properly received in evidence. Although such a sketch has been held to constitute hearsay (*People* v. *Coffey*, 11 N Y 2d 142; but, cf., Wall, Eye-Witness Identification in Criminal Cases, pp. 177–179), appellant Cender's cross-examination of the bar owners, as well as the cross-examination conducted by defendant Stephen Cender, invited the jury to believe that their trial identifications of him had their common source in pretrial meetings between them and the People's prosecutor during which the prosecutor showed them appellant Cender's photograph, together with other evidence. Under such circumstances, it was open to the People to show by means of a prior consistent statement (the sketch) that, at a time when neither witness had made a photographic identification of appellant Cender, they had nevertheless identified him (cf. *People* v. *Jennings*, 23 A D 621). Assuming, however, that it was error to receive the sketch in evidence, we think that the error was insubstantial (Code Crim. Pro., § 542) because, upon the trial, neither bar owner was able to go beyond testifying that a "facial resemblance" existed

between appellant Cender and a customer who had left the bar prior to the robberies and may have returned as one of the robbers. In view of appellant Cender's history of demonstrated criminality and the nature of the crimes at bar, we do not regard his sentence as excessive. The judgment against appellant Frank Peterson, however, should be reversed in the interests of justice. The sole identification witness against Peterson was a woman who, at the time of the robberies, had drunk almost a dozen highballs within the previous five-and-a-half hour period, allegedly observed an unmasked robber for two seconds, and admittedly did not observe obvious facial features. Although Peterson failed to object either to inadmissible testimony by the sole identification witness that she had identified his photograph prior to trial, or to inadmissible police testimony that the identification witness had made a corporeal identification of Peterson at a stationhouse (*People* v. *Trowbridge*, 305 N. Y. 471; *People* v. *Cioffi*, 1 N Y 2d 70), we conclude that the evidence concerning such pretrial identification may have tended substantially to strengthen a weak trial identification. In addition, the People's evidence shows that on March 24, 1964, after Peterson's indictment, and following a conference with the District Attorney, in which his attorney had adverted to Peterson's eligibility for youthful offender treatment, said attorney informed the District Attorney that Peterson was willing to make a full disclosure. The District Attorney answered that Peterson, who was then in the custody of the New York City Department of Correction, would be produced at the District Attorney's office on the next day. When on March 25 Peterson was produced by the Department of Correction, the District Attorney telephoned the office of Peterson's attorney who was not then present. Nevertheless, the District Attorney turned Peterson over to three detectives who allegedly obtained a signed statement which Peterson almost immediately recanted, saying that he had made a false confession because he was fearful of conviction and hoped for treatment as a youthful offender. Because the alleged confession was regarded as false by one of the detectives, it was thrown by him into a wastebasket. However, at the trial, the People produced detectives as witnesses concerning the contents of the alleged confession. In our opinion, the alleged confession contained sufficient admissions to persuade a juror that Peterson was guilty but was attempting to assign himself a minor role in the robberies. Although the alleged confession was obtained in violation of Peterson's rights to counsel and against self incrimination (*People* v. *Di Biasi*, 7 N Y 2d 544; *People* v. *Waterman*, 9 N Y 2d 561; *People* v. *Meyer*, 11 N Y 2d 162), no objection was made at the times of admission of evidence concerning it. Had Peterson's attorney been present at the time Peterson was interrogated at the District Attorney's office, the alleged confession might never have been made and its latent promise of harm to Peterson might never have been tested in the jury room. Because of the weak nature of the evidence given by the sole identification witness against Peterson, the inadmissible nature of pretrial identification evidence used to strengthen that witness' testimony, and the patent, prejudicial violation of Peterson's rights to counsel and against self incrimination, we are constrained to reverse his judgment of conviction in the interests of justice and to order a new trial. Christ, Acting P. J., Brennan, Hill, Rabin and Hopkins, JJ., concur.