Meyer, J.
(dissenting). I agree with the majority opinion except insofar as it holds that the objections to exclusion of the holster and admission of the lawyer’s testimony concerning the proceeds of complainant’s suit against the city were not properly preserved. Because I conclude that these errors were preserved and were not harmless, I would reverse and order a new trial.
With respect to the holster, it is difficult to understand the majority’s statement that defendant’s attorney "created the impression that he was seeking to introduce the gun or weapon, and that the holster was of little or no significance.” (Majority opn, at p 205.) The alleged victim had testified that during the oral sex act she was forced to perform she was kneeling in front of defendant and reached for his gun, but that "[h]is gun didn’t stick out. The holster covered the whole gun”, that "Í was going to grab his gun, but the holster covered the whole gun,” and that "there was like this snap part, and I figured if I snapped it he would feel it, and he’d break my neck or kill me.” Other than to contradict that testimony, there was absolutely no reason for defendant to introduce the gun at all.
And although it is true that there was no direct evidence that the holster introduced with the off-duty gun was the holster worn *206 on the day of the alleged crime (majority opn, at p 204), there was evidence from which the jury could infer that indeed it was the holster worn that day and there is no question that the Trial Judge admitted both defendant’s off-duty gun and holster into evidence. The testimony of Officer Andriano, of the Schenectady Police Department, included the following:
(Defendant’s Exhibit No. B-6 was marked for identification.)
"the court: This is his off-duty gun?
"the witness: Off-duty revolver.
"redirect examination by mr. grasso [defendant’s attorney]:
"Q. Did you ever have occasion to see him wearing his weapon on duty?
"A. Yes, sir.
"Q. Is that weapon that’s in that exhibit marked B-6 similar in size, shape, and nature of the holster?
"A. From what I saw of it, yes.
"Q. That’s your recollection that’s the same type of weapon? You picked it up from him when you picked it up to bring it to the Department?
"A. From what I saw that’s the same weapon and holster from what I saw.
"the court: Why do you call it off-duty?
"the witness: We’re issued a service revolver on duty. You could wear it on duty. An off-duty gun is much smaller and lighter weight. If this is the same gun it’s a five-shot Smith and Wesson .38 special.
"mr. gebell [Assistant District Attorney]: Your Honor, again, I think that the only issue here is the relevancy of a particular gun worn on a particular day. I don’t believe that that witness has in any way identified the gun. In fact, he’s testified he doesn’t know if he had a gun on that day, and I think that it’s irrelevant.
"the witness: I didn’t work that day, that’s why.
"mr. gebell: Well, Your Honor, then it speaks for itself.
"the court: You all done with this witness?
"mr. grasso: Yes. Just one other question before you leave.
"Q. (By Mr. Grasso) How often did you see Officer Mountain priorto, on any regular basis, prior to September 13th of1981?
"A. Every day he worked, and every day I worked for the past 12 years.
*207 "Q. And were you familiar enough with his gun to describe it in the manner in which you just did?
"me. gebell: Your Honor, that’s a leading question.
"the court: Overruled.
"the witness: Yes, sir.
"Q. (By Mr. Grasso) That description you gave is from your recollection of having seen him with it on a regular basis?
"A. Yes, sir.
"Q. Is that the weaponyousaw him wearing at work?
"A. It appears to be the same weapon and holster, yes.
* * *
"Q. (By Mr. Grasso) And what kind of gun is it?
"A. It’s a .38 special Smith and Wesson five-shot snubnose.
"Q. And is that — does that fit the description of the gun you saw him wearing on a regular basis when you saw him?
"A. Yes. It does.
"Q. Does that fit the description of the gun you picked up and brought from him to the Department?
"A. Yes.” (Emphasis supplied.)
A second defense witness, Officer Mulligan, testified with respect to the weapon carried by defendant when on duty as follows:
"Q. Are you familiar with the fact that whether or not Officer Mountain carries a weapon when he’s on duty?
"A. Yes. He did.
"Q. And do you recall what type of weapon he carried?
"A. It was an — I would say a .38 snub nose blue.
"Q. Do you recall what kind of holster he had?
"A. As I recall it was a black leather holster with a strap over the hammer.
"Q. Okay. Did it have a handle on the gun?
"A. Yes.
"Q. Can you tell us whether or not the handle stuck out of the holster or not?
"A. Yes. It did. It was just, as I recall, it was just a strap over the hammer, a thin strap over the hammer itself.”
The Department’s range officer, Officer Martin, whose duty it was to register off-duty guns, testified that defendant’s off-duty *208 gun had been registered on September 28, 1981, which was 15 days after the alleged rape and sodomy, that he did not know whether defendant was wearing the weapon on September 13, 1981, because he, Martin, was not on duty that day. He also identified defendant’s service revolver and testified that an officer on duty would be required to wear a service revolver, but when he was inside was "not required to wear a weapon. He can wear his off-duty weapon.” Defendant’s attorney then offered Exhibit B-6, consisting of the off-duty gun and holster, in evidence, saying, "They have been brought here and adequately identified. Whatever weight the jury wants to give that weapon, I think they should be introduced.” The following colloquy and ruling then ensued:
"the court: Are you saying the offer goes to the weight?
"mr. grasso: Yes.
"the court: Rather than the admissibility?
"mr. gebell: I have no objection to put in the gun worn that day. With regard to this weapon and chain of custody, with regard to this weapon which didn’t appear until more than two weeks after the incident and its production with regard to Officer Andriano’s testimony as to how he got it, he didn’t request the one that he was wearing on that day. There was no mention of that. It’s a self-serving kind of piece of evidence, Your Honor.
"the court: Well, I’m going to receive it and leave it up to the jury. You have heard all the arguments. You decide what weight to give to these particular exhibits.”
Just prior to summations, however, the District Attorney raised the question whether the gun and holster or only the gun had been admitted saying, "I don’t recall any testimony with regard to a holster at all.” The Trial Judge, based upon his recollection, mistaken as the testimony of Andriano and Mulligan demonstrates, that "there was nothing said about the holster”, ruled that "the gun is in evidence. The holster is not”. Their testimony having provided sufficient foundation for admission of the holster and having sufficiently described the appearance of the holster, there was no reason for defendant’s attorney to offer additional evidence of the conflict with the victim’s description of the holster or otherwise to seek to "cure the defect” as the majority suggests (majority opn, at p 204).
That the holster was critical evidence for the defense cannot be doubted, for not only had the alleged victim testified as noted *209 above, but also it is clear from the jury’s request during deliberation to see the holster for the gun, which the court denied, stating that the holster was not in evidence, that it related the victim’s credibility to the holster.
Moreover, the error cannot be held to have been harmless, for the evidence against defendant was far from overwhelming. The victim was the only witness to the multiple sex attacks upon her alleged to have occurred in a cell open to the view of anyone passing by, only a short distance from the matron’s office, and in a cell block which could be entered only with keys kept by the matron, through a door which made a loud bang when it closed. The matron testified that she was on duty on September 13th, between 12 noon and 7 p.m., that the keys were in her possession all the time, and that the victim said nothing to her concerning an attack. Neither she nor the desk officer, whose desk was close to the female cell block, heard a noise such as the cell block door made. Moreover, both she and the desk officer testified that they saw the victim at least once each half hour and saw nothing amiss. Two other witnesses testified that the victim had admitted that she had set defendant up in a plan devised with the man she lived with and expected to get a considerable amount of money, and that defendant had not raped her. That she produced at the hospital a cup into which she said she had, immediately after the incident, spit the sperm ejaculated into her mouth and which was indeed later proved to have contained sperm does not make the evidence against defendant overwhelming in light of the alleged admission that defendant was being set up, the fact that the cup was not observed by anyone until turned over to a nurse at the hospital the next day, and the fact that the victim stopped at the apartment of a friend between the time she was released and the time she arrived at the hospital.
Although the holster error is enough by itself to require a new trial, admission of the victim’s attorney’s testimony concerning donation of the proceeds of her suit against the city was likewise error. The Appellate Division held it admissible under the recent fabrication exception, but the victim never having testified herself that she intended to make such a donation, there was no recent fabrication to which it could relate. Nor can I agree that defendant’s attorney did not object on hearsay grounds, as the majority holds. It is true that he did not use the word "hearsay,” but, as the majority notes, he did object on the grounds that the victim’s conversation with respect to the proceeds of the lawsuit was inadmissible because out of the presence of the defendant. The Trial Judge had previously sustained defendant’s attorney’s ob *210 jection "to anything [the victim] said out of the presence of this Defendant,” indicating that he understood the objection to be but a shorthand way of saying that had such conversation taken place in defendant’s presence it would be admissible as an admission which, though hearsay, "is admitted as an exception to the hearsay rule” (Richardson, Evidence § 210, at 187 [Prince 10th ed]; Fisch, New York Evidence § 792, at 460 [2d ed]). Were this the only error and were the other evidence against defendant overwhelming, it could be disregarded as harmless for, had the victim been asked on direct examination about the proceeds of the lawsuit, her direction to the attorney might have been a prior consistent statement admissible under the recent fabrication rule after the defense testimony of a set-up came in (see, People v Singer, 300 NY 120; Giordano v Eastern Utils., 9 AD2d 947). As it was presented, however, its admission was error.
Judges Jasen, Simons, Kaye and Titone concur with Chief Judge Wachtler; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Alexander concurs.
Order affirmed.