(October 25, 2001)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY HUGHES, Appellant. [732 NYS2d 122] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (McGill, J.), rendered May 12, 1997, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts) and criminal trespass in the second degree.

Defendant was indicted for the crimes of robbery in the first degree, robbery in the second degree, burglary in the first degree, two counts of criminal possession of a weapon in the second degree and burglary in the second degree stemming from alleged home invasions which occurred in the City of Albany on May 14, 1996. Following the denial of his suppression motions, defendant proceeded to trial and, at the close of the People's case, County Court partially granted defendant's motion for a trial order of dismissal (CPL 290.10 [1]). Finding the evidence insufficient to establish the element of forcible

stealing, the court dismissed both robbery counts. The court also dismissed the charge of burglary in the second degree finding the element of intent to commit a crime lacking, but submitted to the jury criminal trespass in the second degree as a lesser included offense. The jury returned verdicts of guilty in reference to the two counts of criminal possession of a weapon in the second degree and criminal trespass in the second degree. County Court sentenced defendant to concurrent prison terms of 3 to 6 years upon his convictions for criminal possession of a weapon in the second degree and a concurrent one-year jail term upon his conviction for criminal trespass in the second degree.

Defendant contends that County Court erred in denying his motion to suppress his oral statements and the victim's trial identification testimony as fruits of an illegal pursuit and arrest (see, Dunaway v New York, 442 US 200) and, further, because the in-court identification was tainted by an unduly suggestive at-the-scene showup.

Evidence adduced at the suppression hearing revealed that on May 14, 1996 at approximately 10:30 P.M., Albany Police Officer Jeffrey Roberts received two radio calls. The first indicated a burglary in progress at 309 Second Street, and the second advised the involvement of two persons with guns at that location. Roberts and his partner responded and the victim, Howard Sullivan, told Roberts that two persons entered his apartment, one of whom he knew by his first name, Anthony, and his street name, "Dog Pound." Sullivan further indicated that Dog Pound held two handguns to his head and demanded, "what's up with the cash?" He described Dog Pound as a black male approximately six feet in height with a thin build dressed in a black hooded sweatshirt and camouflage pants. Sullivan stated that the pair left the apartment and then the scene on bicycles. Roberts put the information on the air and gave it to other officers who arrived at the scene.

Albany Police Officer Mark Leonardo testified that he heard a radio transmission from another officer in "foot pursuit" of a suspect described as a black male, wearing a black coat, black "hoodie," i.e., hooded sweatshirt, and green "camos." He also heard the names Dog Pound and Anthony Hughes transmitted. Leonardo, who knew defendant from the streets and a previous arrest, came upon him and gave chase on foot. Leonardo eventually lost sight of defendant at the rear of 10 Lexington Avenue. Within two minutes, Leonardo heard a radio transmission for a burglary in progress at 10 Lexington Avenue. Responding to that call, Leonardo was admitted to the second

floor residence and told by the residents that there was someone in the rear bedroom who did not belong there. Upon entering the bedroom, he found defendant in a closet. He was handcuffed, placed into a police vehicle and transported back to 309 Second Street, which was around the corner—seconds away—from where he was apprehended. Just prior to the drive back to 309 Second Street, Leonardo administered *Miranda* warnings to defendant who indicated that he understood them; defendant, however, was not questioned. Upon arrival at 309 Second Street, Leonardo escorted defendant to another police vehicle in which Sullivan was seated. Defendant, at that point, was identified by Sullivan.

Defendant was thereafter taken to the police station where he was arrested and processed. Upon learning of defendant's presence at the police station, Albany Police Detective Anthony Ryan, who had a warrant for defendant's arrest, took him to his office for booking on the warrant. After Ryan confirmed with defendant that he was given *Miranda* warnings, he discussed several topics with him. At one point, Ryan asked defendant whether the Berretta nine millimeter weapon was the same one used by another individual in an earlier shooting. Defendant responded by nodding yes. Ryan then asked defendant if the police had all the guns of the Orange Street Boys and defendant answered in the affirmative. The entire conversation lasted about 10 or 15 minutes.

Initially, we find that the broadcasts of the burglary, defendant's name and nickname as a suspect, and his physical description, coupled with Leonardo's personal knowledge of defendant, his observations of him in proximity to the crime scene and defendant's immediate flight upon Leonardo's approach, were sufficient to support a reasonable belief that defendant had committed a crime (*see,* CPL 140.10; *People v Bigelow,* 66 NY2d 417, 423). Armed with probable cause, Leonardo's pursuit and subsequent seizure of defendant were justified (*see, People v Howard,* 50 NY2d 583, 586, *cert denied* 449 US 1023; *People v De Bour,* 40 NY2d 210, 223), as was his transportation back to the scene of the crime for the showup identification (*see, People v Brnja,* 50 NY2d 366, 372).

Regarding the propriety of the showup, the People introduced evidence through the testimony of Leonardo and Roberts. Although defendant was handcuffed when Sullivan observed him, a practice which is disfavored because of its inherent suggestiveness (*see, People v Duuvon,* 77 NY2d 541, 545), we do not find the showup impermissibly suggestive by that alone (*see, People v Lewis,* 277 AD2d 603, 606, *lv denied* 95 NY2d

966). Moreover, because the showup was "conducted in close geographic and temporal proximity to the crime" (*People v Ortiz*, 90 NY2d 533, 537) under circumstances which were "not so unnecessarily suggestive as to create a substantial likelihood of misidentification" (*People v Duuvon*, 160 AD2d 653, *affd* 77 NY2d 541), we find that it was reasonable and not unduly suggestive.

Turning to the propriety of defendant's oral statements, we note that defendant was not prejudiced by these statements since they were never introduced at trial. County Court struck Ryan's testimony before he could relate defendant's oral statements to the jury. In any event, were we to address that issue, we would find, for the reasons set forth above, that they were not the product of an illegal pursuit and arrest, nor were they involuntarily made within the meaning of CPL 60.45.

With regard to Ryan's trial testimony, defendant also claims that County Court erred when it denied his motion for a mistrial after Ryan, who had just begun his testimony, stated that he had a warrant for defendant's arrest. While the remark was prejudicial, we find that the court's action in striking all of Ryan's testimony and its prompt and clear curative instruction were sufficient to dispel the prejudice. Viewing the remark in light of the entire testimony, we find that it was not of such magnitude as to deprive defendant of his right to a fair trial (*see, People v Nagi*, 153 AD2d 964, 965; *People v Celeste*, 95 AD2d 961, 963).

Next, we address defendant's claims that the People improperly bolstered Sullivan's trial testimony. County Court precluded both of the prosecution witnesses, allegedly called for that purpose, from giving any material testimony supportive of Sullivan's testimony. Therefore, we find no merit to this aspect of defendant's bolstering claim. Defendant also contends that the tape of the 911 call that Sullivan made the night of the alleged crimes should not have been admitted into evidence since it constituted improper bolstering. The People offered the tape under the present sense impression exception to the hearsay rule. That rule permits the introduction of "spontaneous descriptions of events made substantially contemporaneously with the observations * * * if the descriptions are sufficiently corroborated by other evidence" (*People v Brown*, 80 NY2d 729, 734-735). Although Sullivan's statements were sufficiently corroborated by the testimony of the officers who chased and apprehended defendant, who matched the transmitted description, there was no evidence establishing the time interval between defendant's alleged acts and Sulli-

van's 911 call. The evidence indicates that Sullivan walked out of his house about one minute after the intruders left, watched them leave and observed that his own bicycle was missing before he returned to his apartment and made the call. Since Sullivan's statements, made during the 911 call, took place after the event being described had concluded, they did not reflect a true present sense impression (*see, People v Vasquez*, 88 NY2d 561, 575). The statements were more representative of "a recalled or recast description of events that were observed in the recent past" (*id.*, at 575). Under the circumstances, it cannot be clearly stated that Sullivan lacked the time to reflect on the event. We, therefore, find that the 911 tape was improperly admitted as a present sense impression (*see, id.*; *People v Robinson*, 282 AD2d 75, 82). We find, however, that the 911 tape qualified for admission under the prior consistent statement exception to the hearsay rule.

While ordinarily, a witness's trial testimony may not be bolstered with pretrial statements (*see, People v McDaniel*, 81 NY2d 10, 16; *People v McClean*, 69 NY2d 426, 428; *People v Singer*, 300 NY 120, 123-124), where a witness's testimony is "assailed—either directly or inferentially—as a recent fabrication [i.e., 'fabricated to meet the exigencies of the case' (*People v Singer, supra*, at 124)], the witness may be rehabilitated with prior consistent statements that predated the motive to falsify" (*People v McDaniel, supra*, at 18; *see, People v Davis*, 44 NY2d 269, 277; *People v Singer, supra*, at 123).

Here, the defense cross-examined Sullivan about a written statement made to its investigator on February 12, 1997, at a time when Sullivan was incarcerated. In that statement Sullivan indicated, *inter alia*, that the man who held the guns to his head wore a mask and that he could not identify him and that he had informed the police of that at the showup. Sullivan also indicated that the police presented him with a written statement containing defendant's name and told him that if he didn't sign the statement, it would be perjury and he would go to jail. Clearly, the primary purpose of eliciting this testimony was to impeach Sullivan's identification of defendant as the perpetrator and to suggest that he had fabricated defendant's involvement in the crimes as a response to alleged police coercion. Since the tape of Sullivan's 911 call antedated the existence of his self-interest motive, it was properly received as a prior consistent statement to rehabilitate his credibility as a witness (*see, People v McDaniel, supra*, at 18; *People v Davis, supra*, at 277; *People v Singer, supra*, at 123).

Finally, we find unpersuasive defendant's argument that

County Court erred by not granting his motion for a trial order of dismissal at the close of the People's direct case (*see,* CPL 290.10 [1]) because the identity of defendant as the perpetrator of the crimes was not established. We have noted that "[a] motion for a trial order of dismissal may be granted where the trial evidence, if accepted as true without considering questions as to the quality or weight of the evidence, is legally insufficient to establish every element of the offense charged" (*People v Sala,* 258 AD2d 182, 188, *affd* 95 NY2d 254). Viewing the evidence in the light most favorable to the prosecution, as we must, we find that Sullivan's unequivocal testimony on direct and redirect examination that defendant was the person who held the guns to his head, provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find defendant guilty beyond a reasonable doubt of all the essential elements of the crime of criminal possession of a weapon in the second degree (*see, People v Williams,* 84 NY2d 925; *People v Contes,* 60 NY2d 620; *People v Sala, supra,* at 188). In so finding, we note that the weapons in question were recovered along the route of defendant's flight from the police.

We have considered defendant's remaining contentions and find that they lack merit.

Mercure, Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.