*525
 
 OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Following a trial that turned on the issue of identity, defendant appeals from his convictions for attempted murder, attempted robbery and related crimes. He was arrested as an accomplice on the strength of a composite sketch created by the victim and a police artist. Defendant argues that the trial court committed reversible error by admitting the sketch into evidence. We agree and therefore reverse defendant’s convictions and order a new trial.
 

 While driving a livery cab in the Bronx, Younis Duopo was shot from behind by one of two African-American male passengers in an attempted robbery. Police recovered shell casings and fingerprints from the vehicle and apprehended the gunman, Marcos Poventud,
 
 [1]
 
 but not his accomplice. Seventeen days later, police arrested three Hispanic males for another Bronx livery cab shooting and recovered the gun used in that crime. Ballistics tests linked the gun to the Duopo shooting.
 

 A New York Police Department (NYPD) detective obtained photographs of two of the three Hispanic assailants and showed them to Duopo, who ruled them out as suspects. Nearly two months later, Duopo met with an NYPD sketch artist who showed Duopo a series of photographs and created a composite sketch designed to reflect Duopo’s recollection of the non-shooter assailant:
 

 The detective showed the sketch to several of Poventud’s family members and friends, one of whom referred the detective to defendant’s home, believing that defendant matched the sketch. Armed with the sketch, the detective went to defendant’s home and, concluding that defendant resembled the sketch, escorted him to the precinct, where Duopo picked him out of a photo array and a lineup. Police then charged defendant as the accomplice in the Duopo case — the appeal before us.
 

 At trial, Duopo identified defendant as the non-shooter assailant. On cross-examination, however, when the defense showed Duopo a photograph of defendant’s brother, Duopo twice identified the brother as the non-shooter assailant. Even though the defense did not assert or even insinuate that Duopo fabricated his testimony, the People offered the composite sketch into evidence to rehabilitate the impeached
 
 *526
 
 identification. At that point, the court sustained defendant’s objection and disallowed the sketch.
 

 On cross-examination, the detective stated that fingerprints found in Duopo’s vehicle did not match defendant’s, and that the detective did not show Duopo a picture of the third Hispanic assailant in the second shooting. The detective further testified that when he got to defendant’s house, there were other males present (perhaps two in all), and that defendant’s brother may have been one of them. The detective also stated that he escorted only defendant to the precinct.
 

 At sidebar, the People again offered the composite sketch into evidence, arguing that in cross-examining the detective, the defense opened the door to the sketch by creating the impression that “Duopo’s identification is incorrect and that the investigation is [a] fraud because the People did not look in the right direction.” The People further asserted that the sketch would show that it “matche[d] Mr. Maldonado almost perfectly,” and asked the court to “let the jury decide whether Mr. D[uo]po, in helping the artist to create [the sketch], knew what he was talking about when he identified [defendant]” in the lineup. Over defendant’s objection, the court admitted the sketch into evidence without stating the basis for its ruling. Neither at that time nor in its concluding charge to the jury did the court give any limiting instruction as to the use or purpose of the sketch, nor did Duopo or the police artist identify the sketch or testify as to how it was created.
 

 In its summation, the defense argued misidentification. In response, the People relied on Duopo’s identification of defendant and emphasized the importance of the composite sketch, asserting that “[defendant] should have paid the sketch artist. People pay to get this done and he got it for free[.] You should ask for it to be signed by the artist who did it and hang it up in [your] room.”
 

 The jury convicted defendant of attempted murder, attempted robbery, assault and criminal possession of a weapon. The Appellate Division affirmed the convictions, concluding that the court properly admitted the sketch based on the prosecution’s assertion that defendant created “a misapprehension as to the integrity of the police focus on him as a suspect” (283 AD2d 282, 282 [2001]). A Judge of this Court granted defendant leave to appeal, and we now reverse.
 

 Police composite sketches are critical investigative tools. They winnow the class of suspects from the infinite down to a lesser number of people — still a great many — who resemble the sketch. If a witness has good observational skills and a reten-
 

 
 *527
 
 tive memory, along with the ability to work in concert with the artist or computer-image technician, there is a better chance that the sketch will resemble the offender and provide a useful lead.
 
 [2]
 
 But a witness is not a camera and a sketch artist is not a photographer. A composite sketch merely reflects the police artist’s interpretation of someone else’s description, based on the artist’s synthesis of an infinite variety of facial features and configurations.
 
 [3]
 
 Moreover, creating a composite sketch carries the “ ‘potential suggestiveness of having a police artist interpret and possibly influence the perceptions of the witness’ ”
 
 (People v Robinson,
 
 285 AD2d 478, 479,
 
 lv denied
 
 96 NY2d 923 [2001];
 
 People v Ross,
 
 186 AD2d 1006,
 
 lv denied
 
 81 NY2d 766 [1992] ).
 
 [4]
 

 In light of these difficulties, courts and juries have no way to determine reliably whether a witness helped generate a depiction that mirrors the offender or one that in reality looks nothing like the offender. Nevertheless, when a sketch forms the basis for an arrest, one thing is certain: if the sketch is right it will resemble the person accused, and if the sketch is wrong it will resemble the person accused. Indeed, the accused — innocent or guilty — is
 
 supposed
 
 to look like the sketch.
 

 
 *528
 
 When a jury examines a composite sketch, the temptation to inculpate or exonerate the defendant on the basis of the sketch is all but irresistible. A great many other people may also resemble the sketch, but only the defendant on trial sits before the jury. Despite any influence of the artist’s interpretations or possibility that the sketch may be inaccurate, many jurors will be prone to conclude — if not exhorted to conclude — that because the defendant sitting before them matches the sketch, the defendant must be guilty. The prejudice of that circular logic is manifest and inescapable.
 

 In the case before us, the People sought to admit the composite sketch to prove defendant’s guilt and urged the jury to infer guilt based on his resemblance to the sketch. This Court has long considered composite sketches to be hearsay
 
 (see People v Coffey,
 
 11 NY2d 142, 145 [1962];
 
 see also People v Peterson,
 
 25 AD2d 437, 437-438 [1966];
 
 People v Jennings,
 
 23 AD2d 621 [1965]),
 
 [5]
 
 and thus generally inadmissible against defendants to prove guilt
 
 (see e.g. Coffey
 
 at 145;
 
 see also People v Griffin,
 
 29 NY2d 91, 93 [1971]).
 
 [6]
 
 Mere mention at trial that an identifying witness cooperated with a police artist to produce a composite sketch is, under most circumstances, impermissibly prejudicial
 
 *529
 

 (see People v Lindsay,
 
 42 NY2d 9, 12 [1977];
 
 Griffin
 
 at 93;
 
 see also
 
 Prince, Richardson on Evidence § 8-803, at 673 [Farrell 11th ed]). This is especially true where, as here, the identity of the assailant is in dispute
 
 (see Griffin
 
 at 93) and the proof rests entirely on identification. A composite sketch “may not be admitted simply to counteract evidence * * * which casts doubt on the reliability of [a] complainant’s identification”
 
 (People v Falterman,
 
 74 AD2d 584, 584 [1980];
 
 People v Ivey,
 
 83 AD2d 788, 789 [1981]). When offered for that purpose, a composite sketch impermissibly bolsters the identifying witness’s testimony and is therefore inadmissible
 
 (see People v Davis,
 
 44 NY2d 269, 277-278 [1978]).
 

 That is not to say that a composite sketch may never be received in evidence. As an exception to the hearsay rule, a composite sketch may be admissible as a prior consistent statement where the testimony of an identifying witness is assailed as a recent fabrication
 
 (see Coffey,
 
 11 NY2d at 145-146). In those circumstances, a sketch may be employed to confirm the identification with “proof of declarations of the same tenor before the motive to falsify existed”
 
 (id.
 
 at 145, quoting
 
 People v Singer,
 
 300 NY 120, 123 [1949] [internal quotation marks omitted]). Under this well-settled principle, “recent fabrication” means “charging the witness not with mistake or confusion, but with making up a false story well after the event”
 
 (Davis,
 
 44 NY2d at 277;
 
 see also Singer,
 
 300 NY at 124; Barker and Alexander, Evidence in New York State and Federal Courts § 6:41, at 544-545 [2001 ed]). Accordingly, courts of this state have applied the hearsay rule to bar admission of composite sketches where there was no claim of recent fabrication
 
 (see Ivey,
 
 83 AD2d at 789;
 
 Falterman,
 
 74 AD2d at 584;
 
 see also Lindsay,
 
 42 NY2d at 12 [excluding testimony that a witness helped police construct a composite sketch absent allegation that the identification was a recent fabrication]).
 
 [7]
 

 In the case before us, the trial court properly denied the People’s first motion to admit the composite sketch to rehabilitate Duopo’s impeached identification. By showing Duopo a picture of defendant’s brother (and thus inviting Duopo to identify the brother as the non-shooter assailant), the defense
 
 *530
 
 did not suggest that Duopo had fabricated his identification. The thrust of the inquiry was to show that Duopo was mistaken, not that he was lying. Because the defense did not assert that Duopo had fabricated his testimony, admitting the sketch to rehabilitate Duopo’s identification would have impermissibly bolstered his testimony
 
 (see Davis,
 
 44 NY2d at 277;
 
 Falterman,
 
 74 AD2d at 584), and the court correctly ruled it inadmissible.
 

 The court erred, however, in admitting the sketch on the People’s second application, after defendant had cross-examined the detective. To the extent the People again offered the sketch to rehabilitate Duopo’s identification, it remained inadmissible for that purpose because nothing about the cross-examination of the detective suggested that Duopo had lied in identifying defendant as the non-shooter assailant.
 

 In the alternative, the People sought to introduce the sketch to show that the detective was not motivated by bad faith in bringing the sketch to defendant’s home or escorting defendant to the police precinct. We decline to accept the People’s invitation to equate a challenged police investigation with an allegation of recent fabrication under the hearsay rule. By cross-examining the detective and probing his failure to show Duopo the third Hispanic assailant’s picture or bring others found at defendant’s home to the precinct, the defense did not suggest that the detective had fabricated his testimony or otherwise acted in bad faith. Rather, that line of inquiry simply questioned the completeness of the investigation against defendant.
 

 Nor by its questioning of the detective did the defense open the door to admitting the composite sketch. The defense asked only whether there were other males present at defendant’s home when the detective arrived with the sketch. That inquiry merely completed the account brought out by the prosecutor, and did not carry an implication of fraud or bad faith. The cross-examination on this issue was brief and straightforward, and in no way argumentative. Thus, we conclude that the defense did not open the door to the challenged evidence.
 

 On these facts, the court’s erroneous admission of the sketch was not harmless
 
 (cf. e.g. People v Crimmins,
 
 36 NY2d 230 [1975]). There was no witness to the crime other than Duopo, who described the assailant to the sketch artist two months after an attack from which Duopo suffered life-threatening head injuries. Fingerprints recovered from Duopo’s vehicle did not match defendant, who had no criminal record,
 
 *531
 
 nor could the gun be linked to him. The only shred of evidence connecting defendant to the crime was his alleged association with Poventud’s family. That thinnest of threads falls far short of the level of proof — overwhelming evidence of guilt — that is required to apply the harmless error doctrine. We therefore conclude that the admission of the composite sketch against defendant was reversible error.
 

 Having concluded that the court committed reversible error by admitting the composite sketch, we need not reach defendant’s remaining contentions.
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order reversed, etc.
 

 [1]
 

 . Though tried jointly with defendant, Marcos Poventud is not a party to this appeal.
 

 [2]
 

 .
 
 See generally
 
 Ellis et al.,
 
 A Critical Examination of the Photofit System for Recalling Faces,
 
 21 Ergonomics 297, 306 (1978); Hall et al.,
 
 Postevent Information and Changes in Recollection,
 
 reprinted in Wells and Loftus, Eyewitness Testimony, at 128-129 (1984); Note,
 
 Hearsay and Relevancy Obstacles to the Admission of Composite Sketches in Criminal Trials,
 
 64 BU L Rev 1101, 1102-1103 (1984) (hereinafter
 
 Hearsay and Relevancy
 
 Obstacles);
 
 cf.
 
 Davies et al.,
 
 Face Identification: The Influence of Delay Upon Accuracy of Photofit Construction,
 
 6 J Police Sci & Admin 35, 36, 42 (1978) (hypothesizing little decline in identifying witness retentiveness after one week).
 

 [3]
 

 .
 
 See United States v Zurita,
 
 369 F2d 474, 477 (1966),
 
 cert denied
 
 386 US 1023 (1967) (“A picture may be worth a thousand words, but it does not record those words or reproduce them or, indeed, even indicate what they are. Drawing is selective and interpretive, and an artist, even when attempting to copy or to work from another’s direction, is not merely a stenographer with a peculiar system of shorthand. His work contains and reveals his impressions from information given to him”);
 
 see generally
 
 Cohen,
 
 Number of Features, and Alternatives per Feature, in Reconstructing Faces with the Identi-Kit,
 
 1 J Police Sci & Admin 349, 349-350 (1973);
 
 Hearsay and Relevancy Obstacles,
 
 64 BU L Rev at 1118 n 97; Moenssens et al., Scientific Evidence in Criminal Cases, at 771-772 (3d ed 1986); Orange County Sheriffs Office,
 
 Composite Drawings,
 
 <http://www.courts.state.ny.us/reporter/webdocs/ COMPOSITE_DRAWINGS.htm>; Yarmey, The Psychology of Eyewitness Testimony, at 147-152 (1979).
 

 [4]
 

 .
 
 See also
 
 Taylor, Eyewitness Identification § 5, at 127 (1982);
 
 accord
 
 US Department of Justice, Office of Justice Programs,
 
 Eyewitness Evidence: A Guide for Law Enforcement
 
 § II, at 18-19 (1999) (<http:// www.courts.state.ny.us/reporter/webdocs/eyewitness — evidence.pdf>).
 

 [5]
 

 . Other states have similarly characterized police composite sketches as hearsay (see
 
 e.g. State v Motta,
 
 66 Haw 254, 260-261, 659 P2d 745, 749-750 [1983] [admitting composite sketch under exception to hearsay rule as prior consistent statement to rebut claim of recent fabrication];
 
 Commonwealth v McKenna,
 
 355 Mass 313, 244 NE2d 560 [1969] [classifying police composite sketches as hearsay];
 
 Commonwealth v Morris,
 
 522 Pa 533, 541, 564 A2d 1226, 1230 [1989],
 
 cert denied
 
 521 US 1106 [1997] [same];
 
 but see United States v Moskowitz,
 
 581 F2d 14, 21 [2d Cir 1978] [holding that under Federal Rules of Evidence rule 801 (d) (1) (C), composite sketch is not a “statement” and therefore not hearsay],
 
 cert denied
 
 439 US 871;
 
 State v Packard,
 
 184 Conn 258, 274, 439 A2d 983, 992 [1981] [following
 
 Moskowitz
 
 view that composite sketches are not “statements” under rule against hearsay];
 
 State v Patterson,
 
 332 NC 409, 418, 420 SE2d 98, 102-103 [1992] [same]; see
 
 generally
 
 Annotation,
 
 Admissibility in Evidence of Composite Picture or Sketch Produced by Police to Identify Offender,
 
 23 ALRSth 672).
 

 [6]
 

 . At least one court and several commentators have suggested that a police composite sketch is double hearsay when offered to prove guilt (see
 
 People v Turner,
 
 91 Ill App 2d 436, 444, 235 NE2d 317, 320 [1968] [stating that composite sketch was artist’s “out-of-court belief as to the likeness of the assailant” based on description of observer narrated in yet another out-of-court statement];
 
 Hearsay and Relevancy Obstacles,
 
 64 BU L Rev at 1126 [“Composite reliability depends on both the veracity of the eyewitness’ out-of-court description of the offender, and the way the police translate that description into picture form”]; Mauet,
 
 Prior Identifications in Criminal Cases: Hearsay and Confrontation Issues,
 
 24 Ariz L Rev 29, 36-37 [1982] [suggesting that composite sketch is functional equivalent of police artist testifying to victim’s out-of-court description of offender];
 
 see also Zurita,
 
 369 F2d at 477).
 

 [7]
 

 . We have also permitted defendants to offer composite sketches to rebut the People’s showing of probable cause to make an arrest or show inconsistencies between an in-court identification and a witness’s prior description as recorded in the sketch (see
 
 Griffin,
 
 29 NY2d at 93; see
 
 generally
 
 Annotation,
 
 Accused’s Right to Production of Composite Drawing of Suspect,
 
 13 ALR4th 1360).